# THE AMERICAN SYRUP AND PRESERVING COM-PANY *vs.* WM. H. ROBERTS, TRADING AS THE OLD TOWN CAN COMPANY.

*Evidence—Instructions to Jury—Sales—Warranty of the Soundness Relates to the Time of Delivery.*

In an action to recover damages for the defective condition of tin cans bought by the plaintiff from the defendant, who was a manufacturer, a witness may be asked whether or not all of the cans manufactured by the defendant were sub-jected to a certain test, since there was no evidence in the case to show that those shipped to the plaintiff were not man-ufactured by the defendant.

A prayer instructing the jury that, "if from the evidence they find for the plaintiff they cannot speculate as to the measure of damages, and unless they find a certain and definite amount as the loss, they cannot find for the plaintiff more than nominal damages," is calculated in some instances to mislead the jury. But since in this case the jury found a verdict for the defendant, the plaintiff was not injured by the instruction.

The warranty of soundness of an article sold relates to its con-dition at the time of delivery or transfer of title.

A written contract provided for the sale by the defendant in Baltimore to the plaintiff in Nashville, Tenn., of a quantity of tin cans, to be shipped in April and May, f. o. b. Balti-more, sight draft against bill of lading, "usual guarantee against leaks not to exceed two to the thousand." Plaintiff alleged in this action that many of the cans so bought and paid for were leaky and worthless and brought this action to recover damages therefor. His evidence showed that the use of the cans did not begin until sixty or ninety days after their receipt. *Held,* that under the contract the place of de-livery of the cans was Baltimore; that the warranty of sound-

ness related to their condition at the place and time of delivery, and that the jury was properly instructed that the defendant was only bound to deliver the cans to the plaintiff f. o. b. cars Baltimore, free of leaks, exceeding two cans to each thousand, and unless from the evidence the jury found that the defendant did not so deliver the said cans, then the plaintiff is not entitled to recover.

*Decided January 12th, 1910.*

Appeal from the Court of Common Pleas of Baltimore City (DOBLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*Ralph Robinson,* for the appellant.

*Willam A. Wheatley,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant sued the appellee to recover damages alleged to be sustained by the former by reason of the latter furnishing it a number of tin cans, many of which were leaky and entirely worthless for the purposes for which they had been ordered and purchased. The trial of the case having resulted in a verdict for the defendant, the plaintiff appealed from the judgment entered thereon.

During the course of the trial the following contract was offered in evidence:

"BALTIMORE, MD., March 23, 1904.

Sold to the American Syrup and Preserving Company, Nashville, Tenn., 100,000 No. 3 P. H. cans, full standard size, at $18.00 per 1,000 f. o. b. Baltimore. Shipment to be made one car on or about the latter part of April, and one the last week of May. Usual guarantee against leaks, not to exceed two to the 1,000. Full complement of caps. Terms: Sight draft against B/L."

It was signed by both parties.

There are two bills of exception in the record, the one presenting the ruling of the Court on a question of evidence. and the other embracing the rulings on the prayers. The Court granted the defendant's fifth, seventh and eighth prayers, and overruled the plaintiff's special exception to the defendant's fifth prayer. We will first consider the question of evidence. William Hudgins testified that he had been engaged for fourteen years testing cans and had been testing for the defendant six years. He then described the method of making the test, and in answer to the question whether he had tested all the cans which had been shipped by the defendant, since he was in his employ, he replied that he had, but added that "in case of sickness we generally have a special gentleman to take my place in testing, of course, he is as good as I am, to do any testing." On cross-examination he was asked whether he knew any thing about this particu lar shipment, and replied: "I don't know nothing about that, when I test cans and they go through my hands, I don't know where they go to." He was then asked on re-examination: "State whether or not all the cans manufactued by William H. Roberts, trading as the Oldtown Can Company, since you have been in its employ, no matter to whom shipped or where going, whether or not these cans were subject to this test?" And he replied: "Yes, sir." Thereupon, the plaintiff, having previously objected to the question as irrevelant, immaterial and incompetent, moved to strike out the answer, but the Court overruled the motion, and the plaintiff excepted to its ruling.

We do not see any objection to that testimony. The plaintiff on cross-examination had attempted to cast doubt on the statement of the witness in chief, by showing that he did not know anything about the shipment of these particular cans. It is true that the question was confined to "all the cans manufactured" by the defendant, while a former question related to all "shipped," but there is nothing to show that any were shipped by the defendant which were not manu-

factured by him. If there were any it was proper to prove that such as were manufactured were tested, and other testimony could have been offered as to those which were shipped, but not manufactured by him. There was some controversy in the testimony as to whether the cans of the defendant were marked with an O in another O—the plaintiff's witnesses claiming that they identified the cans by such mark, and the defendant's witnesses denying that the cans manufactured by him had such mark, but it was not said that he shipped any which he did not manufacture. The inference to be drawn from the testimony is that the defendant was undertaking to show that the plaintiff's witnesses were speaking of cans other than those shipped by the defendant, and it seemed to be assumed that he had manufactured all that were shipped.

We do not find any reversible error in the fifth prayer of the defendant which instructed the jury that "if from the evidence they find for the plaintiff, they cannot speculate as to the measure or amount of damage, and unless they find from the evidence a fixed certain and definite amount as the loss, if any, they cannot find for the plaintiff more then nominal damages." Such prayers are not desirable, and may in some instances mislead the jury. Of course, the jury has no right to speculate as to the amount of damage, and they ought to rely on definite evidence, but when the evidence as to damage is not contradicted, it may mislead the jury to give such instruction as this. But as the prayer permitted the jury to find at least nominal damages for the plaintiff, if they found for it at all, and as in point of fact they found for the defendant, it is manifest that the plaintiff was not prejudiced by the instruction, as the case did not turn on the amount of damages the plaintiff sustained, but whether it was entitled to recover at all, as is shown by the defendant's seventh prayer.

The latter is the one which presents the important question in the case. It is as follows: "The Court instructs the jury that by the terms of the contract sued on, the defendant

was only compelled to deliver the cans to the plaintiff f. o. b. cars at Baltimore, free of leaks exceeding two cans in each one thousand, and unless from the evidence the jury find that the defendant did not so deliver the said cans f. o. b. Baltimore, not exceeding two leaks per thousand cans, then the plaintiff is not entitled to recover in this action."

In *Lawder Co.* v. *Mackie Grocery Co,,* 97 Md. 1, the terms of sale of some canned tomatoes were cash, "buyer to give shipping instructions when requested by seller. To be delivered as packed during the season of 1901 f. o. b. Baltimore." In a suit by the puchaser who lived in New Orleans, against the sellers, who were canners in Baltimore, for breach of contract in not furnishing the tomatoes, we held that by the terms of the contract the payment was to be made in Baltimore upon delivery of the tomatoes on board the car and the purchaser having refused, as alleged in the plea under consideration in that case, to make such payment, it could not sustain the action. Reliance was placed on the right of the purchaser to inspect the goods before acceptance, and, conceding that right, we said: "The mere fact that the buyer has the right to inspect goods before acceptance does not necessarily mean that the inspection is to be made at the residence or place of business of the buyer. He might inspect at the seller's place of business, but if the contract provides for delivery at a particular place, he must accept or reject at that place, unless otherwise provided for in the contract. In short, a contract to deliver at one place cannot be said to mean delivery at another place, because the buyer lives there and has the right to inspect the goods." In this case the cans were sold "at $18.00 per 1000 f. o. b. Baltimore," where the seller had his factory, and the terms were "Sight draft against B/L"—meaning bill of lading. In the case of the *Lawder Co.* v. *Mackie Co.,* the terms were "Cash"—we having held that the addition "less one and one-half per cent" did not prevent the sale from being treated as a cash sale. It is largely upon that difference in the terms that the

appellant relies, although there are other important distinctions between the two cases.

If this prayer had referred to the pleadings, it would have simplified the case, for the declaration alleges that the defendant proceeded to ship the cans "which the plaintiff, relying upon said guarantee *and in compliance with the terms of sale,* paid for, immediately upon being advised of shipment, and before delivery, and consequently without any opportunity of examination." But as none of the prayers in the record refer to the pleadings, we must be governed by the evidence alone. When, however, the evidence is examined there would seem to be but little room to doubt the intention of the parties and their understanding of the contract. Mr. Rich, the secretary and treasurer of the appellant, who was the only officer of the company examined, said on cross-examination: "That it is a fact that the defendant did not deliver the cans at Nashville, Tennessee, and that it is a fact that by the terms of the contract they did not have to deliver them to the plaintiff at Nashville, Tennessee; that he guesses the defendant made delivery in Baltimore, f. o. b. Baltimore; that he judges the defendant did deliver the goods on board Baltimore, that he got them in Nashville; that he got the bill of lading with draft attached; that by the terms of the contract the plaintiff was to pay the sight draft against the bill of lading issued to the plaintiff company; that this was done." He also testified that they had no machinery for testing cans. The above testimony was admitted without objection, and therefore is to be considered, even if there is any question about its admissibility.

In *Dexter Paper Co.* v. *McDonald,* 103 Md. 391, this Court said: "But this is not all that appears to indicate the true construction of the contract in question. 'Every contract is * * * to be interpreted in connection with the surrounding circumstances; and the acts of the contracting parties in fullfillment of the contract may be regarded in order to see what interpretation they themselves put upon it and what conditions have been waived or performed; and the con-

struction of the instrument may thus be varied by matters *ex post facto.'* 2 *Addison on Cont.* 1193 (star paging). In this case the acts of the parties throw light upon how the contract in question was understood by them." The testimony of Mr. Rich further shows that after the cans arrived at Nashville, and they had paid the drafts, they were taken into actual possession by his company, and, although he was not very definite as to the precise time, his evidence shows that they were not commenced to be used for some time, perhaps sixty or ninety days after their receipt. The first car was shipped the latter part of April, and the second in May, and they did not begin to can the tomatoes until the latter part of July—finishing in August. It is not shown exactly when they reached Nashville, but in the absence of evidence of some unusual delay, we can assume that it did not take several months for a car to go from Baltimore to Nashville. In *P. B. & W. R. R. Co.* v. *Diffendal,* 109 Md. 510, it was said, the Court could in the absence of direct proof take judicial notice of the location of two such large and important cities as Baltimore and Washington, as well as the distance between them, and of the approximate length of time required to transport a carload of goods from one city to the other, and whether or not that would be applicable to the present case, the evidence of Mr. Rich is sufficient to show that the cans were received some time before his company had to use them.

It could not be contended that the appellant could delay inspection and testing until it was ready to use the cans. There is not a particle of evidence to show that the cans were in a different condition when they arrived in Nashville, from what they were when they left Baltimore, but on the contrary, the evidence of Mr. Rich, and of the appellant's only other witness, is to the effect that they were not properly soldered, and that the solder was not of a proper kind. Of course the purchaser had the right to rely on the guarantee, and that is what it apparently did. The appellant does not and could not consistently, claim that it discovered

the defects before it put the tomatoes in the cans, for, if it did, it could not recover for the loss of such as it put in defective cans. The evidence of Mr. Rich was that about a week after the tomatoes were put in the cans, it was noticed that a good many of them were "forcing open."

The evidence of the plaintiff offered to show what it was entitled to recover consisted of slips of paper, stating the leaks at seams, ends and swells, and then two from each thousand were deducted from the whole, that being, it will be remembered, the warranty in the contract. So we have the testimony of the plaintiff's own officer that there was a delivery at Baltimore, and that the defendant did not have to deliver the cans at Nashville; and in addition to that we have the claim for recovery based on the warranty in the contract. Besides that, the plaintiff's prayer required the jury to find, amongst other things, that the bursting or leaking of the cans "was the result of their being improperly manufactured or manufactured out of improper materials." There is no question about the cans having been sold and delivered—the only question raised being as to the place of delivery, and the plaintiff's officer showed his understanding of the contract to be that the place was where the defendant claimed it to be, namely, "f. o. b. Baltimore." If there could be any doubt about that by reason of the provision "Sight draft against B/L," the warranty would seem to solve it—"Usual guarantee against leaks, not to exceed two to the 1000." While there may be a warranty of future soundness "a warranty is ordinarily confined to the state of affairs existing at the time of sale, and is to be so construed in the absence of a clear understanding to the contrary." 30 *Am. & Eng. Ency. of Law,* 134. As is said on pages 174 and 175 of that volume: "The parties may, by express agreement, fix a particular future date as the time to which the warranty shall be referred, and, in such a case, the condition of the article at the time so fixed becomes the material injury. But, in the absence of such an agreement, the warranty is always to be construed as relating to the condition of the article at the

time of the sale, that is, when the transfer of title took place and not when delivery was made. If the sale is 'f. o. b.' at the seller's place of business, he will not be liable, on his warranty, for any deterioration of quality occurring after the shipment and while the goods were in transit unless it was due to his negligence in the manner of shipment. The buyer may, however, in such a case, having had no opportunity of testing the quality of the goods at the place of shipment, introduce evidence as to their bad quality when they reached him, together with expert testimony to show the means used for their preservation, and that if good when shipped they ought to have remained so."

It would seem therefore to be clear that as these cans were sold "f. o. b. Baltimore" with the "usual guarantee against leaks, not to exceed two to the 1000," the warranty was as of that place and not as of Nashville. And as the evidence shows that the suit was based on the warranty, and there is not only no evidence of negligence of the defendant after shipment, but none of any deterioration after the cans were placed f. o. b. Baltimore, the seventh prayer of the defendant was correctly granted, as whatever effect the term "sight draft against B/L" might have in some cases, it cannot be held to be sufficient to extend the warranty, under the evidence in this case, beyond the time the cans were placed on board at Baltimore. It would be useless, therefore, to prolong this opinion by comparing further that term with the one in the case of *Lawder Company* v. *Mackie Company.*

We do not understand the exception to the eighth prayer to be pressed, but will add that there does not seem to be any valid objection to it. We will affirm the judgment.

*Judgment affirmed, the appellant to pay the costs.*