John A. MALIA, State Bank Com'r, for Use and Benefit of CREDITORS OF NORTH SANPETE BANK, v. SEELEY.

No. 5586. Decided May 2, 1936. (57 P. [2d] 357.)

*Will L. Hoyt*, of Nephi, for appellant.

*Ray E. Dillman*, of Roosevelt, for respondent.

FOLLAND, Justice.

This is an action in claim and delivery for a herd of approximately 468 sheep. They were found in Uintah county, Utah, in possession of the defendant, who claimed them as his own. Plaintiff asserts the sheep are the survivors and increase of 300 ewes wrongfully taken in July of 1931 by the defendant from the herd of his father, Joseph N. Seeley, while under mortgage to the North Sanpete Bank. The bank in July of 1931 was taken over by the state bank com-

missioner. Prior to the present action, the bank commissioner foreclosed the bank's mortgage on the Joseph N. Seeley sheep, but at that time only 714 of the mortgaged sheep were found. The issue submitted to the jury was whether the sheep claimed in this action were the mortgaged sheep of Joseph N. Seeley or were sheep separately owned by the defendant, Maxwell D. Seeley. The verdict was for the defendant, and plaintiff appeals. Assigned errors attack the court's rulings excluding certain offered evidence and in the giving of instructions to the jury and refusal to give instructions requested.

The record discloses that Joseph N. Seeley executed and delivered a chattel mortgage to the North Sanpete Bank on March 9, 1931, to cover 1,200 sheep and reciting that 500 of the sheep were at the ranch of the mortgagor near Hayden in Duchesne and Uintah counties, and 700 were in a herd run by S. A. Russell in Uintah county. It recited that it covered and attached to all sheep owned by the mortgagor having the marks and brands described in the mortgage, together with the wool grown thereon and the offspring therefrom. In September of 1931 the bank commissioner, claiming default in respect to the mortgage note, undertook to possess the Seeley sheep. He located a flock of 714 in Uintah county, took possession by claim and delivery action, and later foreclosed the mortgage. Maxwell D. Seeley was made a party defendant in the foreclosure action. Joseph N. Seeley filed no answer, and his default was entered and judgment taken against him. Maxwell D. Seeley answered, claiming to be the owner of the sheep under a bill of sale from his father. Judgment was made and entered for the bank commissioner, wherein the interest of Maxwell D. Seeley was declared subordinate and inferior to that of the commissioner, the mortgage foreclosed, and the sheep sold; that is, the mortgage on all the sheep involved was foreclosed but only 714 sheep were found. These were sold. The complaint herein recites that 300 sheep were sold to the bank commissioner. We assume this sale to the bank

commissioner was of sheep not then in possession, and that by virtue of this sale he claims the sheep here in controversy as sheep on which the mortgage was foreclosed and sold to him for and on behalf of the bank and its creditors. The sheep involved in the present action were found in possession of the defendant at Hayden, Uintah county. Demand was made for their possession and refused, whereupon this action was commenced. Plaintiff alleged the sheep were survivors and increase of 300 sheep unlawfully and wrongfully separated and taken from the Joseph N. Seeley herd by the defendant in July of 1931 with full knowledge and notice that the sheep were mortgaged and with intent to defraud the bank and its creditors; that the defendant had changed the marks and brands on such sheep with the same knowledge and intent. Defendant answered, denying the allegations of wrongful conduct, and affirmatively alleged that the sheep involved were not within those foreclosed upon and sold to the plaintiff at foreclosure sale, and that any and all sheep sold pursuant thereto were other, separate, and distinct sheep from those affected by this action, and that the right of action based on the note and mortgage became merged in the deficiency judgment in the foreclosure suit, and that any rights of plaintiff are now extinguished by reason thereof. He further alleged that the sheep were his own property, owned by him in his individual right, and not subject to any claim or demand of plaintiff.

The evidence need not be stated in detail. Each party adduced evidence tending to support the allegations of such party. The evidence of both parties proved that the sheep in issue were the survivors, the increase and replacements of 300 ewes concededly separated by the defendant from the herd of his father in July of 1931, and that defendant changed the marks and brands of the original sheep. It was conceded, too, that the defendant had charge of his father's sheep in July of 1931 and had control over them for more than two years prior thereto.

Plaintiff's evidence tended to show that the sheep so sep-

arated from the Seeley herd were owned by Joseph N. Seeley, bore his marks and brands, were sheep that were covered by the mortgage to the bank, and that the change of the marks and brands by Maxwell D. Seeley was for the purpose of defrauding the bank and its creditors. Defendant's evidence tended to show that he had personally bought the sheep from others prior to 1931, which sheep he had run with his father's herd until July of that year, when they were separated and put in another herd under lease; that the marks and brands of such sheep were those of the former owners from whom they had been purchased and had been changed by Maxwell D. Seeley to his own marks and brands. There was a sharp conflict in the evidence, and from the evidence the jury could well have found for the plaintiff, or, as it did, for the defendant. The judgment must be sustained unless prejudicial error is found in the rulings of the court on admission of the evidence or with respect to instructions to the jury.

The defendant testified that in 1929 he was running his father's sheep; that he personally bought a small band of sheep from one Leavitt in 1929 which was run with his father's herd; that he and one Ashton bought sheep in the fall of 1929, and, after selling the wethers, kept the ewes, and on a division of these sheep between them Maxwell ran his sheep in the herd of his father; that he branded and marked his own sheep differently from those of his father, describing the marks and brands on both; and that when the sheep were sheared his wool was separately piled and sacked but sold with his father's wool; that his own sheep remained in the Joseph N. Seeley herd until July of 1931, when he separated them at Arnold's corral; and that he then leased them to George Arnold, who took them into his herd. On cross-examination defendant was asked if he had not testified on the trial in the foreclosure suit that he had claimed the sheep in his father's herd as his own under a bill of sale from his father, to which he answered that he had. The bill of sale was identified by him and intro-

duced in evidence. In rebuttal the plaintiff offered the transcript of all the defendant's testimony in the foreclosure suit, and, on objection being sustained, offered separately specific parts of such testimony, including an answer by Maxwell D. Seeley that he was not a partner with his father in running the sheep. The objections made to the offers were that they were not proper rebuttal, not impeachment, and that no proper foundation had been laid for the admission of the transcript or any part thereof. The court sustained the objection on the ground it was not rebuttal. It is contended by appellant that the transcript in whole or in part was admissible as containing admissions by a party to the action, and therefore not limited by the impeachment rule. If it was offered as impeachment, the familiar rule is applicable that the attention of the witness must be called to the alleged contradictory or variant statements after fixing the time, place, and circumstances under which they were made and the witness afforded an opportunity of admitting, denying, or explaining making the same. No foundation was laid for impeachment, and therefore the transcript could not have been received on that ground. Statements in the nature of admissions are admissible against a party to a suit for the purpose usually of establishing the fact to which the statements refer. Admissibility is not dependent on any tendency to discredit or contradict the testimony of the party, although the statements may be so used. 22 C. J. 299; *In re Miller's Estate,* 31 Utah 415, 88 P. 338. Where the offered statements tend to establish facts relied on by plaintiff to maintain his case, they are properly admissible in chief and not in rebuttal. If the statements tend to contradict or discredit the party's testimony or to establish a fact contrary to or different from that shown in defense, then they are admissible in rebuttal. We have read the testimony set forth in the offered exhibit, but are unable to find therein anything which would be admissible as rebuttal. If admissible under the first classification, it was too late on rebuttal, unless the court, on request, had allowed

plaintiff to reopen its case in chief. No such request was made. The statement of defendant in the foreclosure suit most strongly relied on by plaintiff as being admissible to contradict or discredit the testimony given in this case is the answer that he and his father were "not partners in any way" in running the sheep. This is not in conflict with any testimony given by him in this case. He did not claim to have been a partner with his father. He merely testified he had run his own sheep in his father's herd. As to this he was examined and cross-examined fully. He was also examined respecting his claim to sheep under bill of sale from his father. We are unable to find in the offered exhibit any statement or admission properly admissible as rebuttal.

The following questions were asked the defendant on cross-examination:

"In that former action or trial, did you make any statements as to owning any sheep which had been ranged or kept with your father's sheep?"

"Did you make any claim to any of the sheep, other than under the bill of sale, which is shown in evidence as exhibit K, or a certified copy of it, being shown in evidence as exhibit K in this case?"

Objection was made to each question that it was not proper cross-examination. The objections should have been overruled and answers permitted. Cross-examination is permissible for the purpose of testing the memory, sincerity, or reliability of a witness and as affecting his credibility. A party has a right on cross-examination to draw out anything which would tend to contradict, weaken, modify, or explain the testimony given by the witness. *In re Bryan's Estate*, 82 Utah, 390, 25 P. (2d) 602. The extent of cross-examination rests largely in the sound discretion of the trial court, and its rulings will ordinarily not be disturbed, unless there has been an abuse of discretion or where prejudice is shown. The first question above quoted has reference to the sheep in issue, and is directed to learn whether the defendant had made a statement contrary to the testimony given by him in this case. We see no prejudice

to plaintiff by the ruling, because an inspection of the former testimony given by defendant fails to disclose that he made any statement or answered any question with respect to the particular sheep now claimed by the parties in this action. His testimony in the former case had reference to the 714 sheep there involved which he conceded belonged to his father up to the time they were transferred to him by bill of sale. He claimed them by virtue of the bill of sale, and so answered on cross-examination in the instant case. While the mortgage covered 1,200 sheep and the bill of sale mentioned 900 sheep, the questions put to the defendant at the former trial had reference to the herd of 714 sheep of which plaintiff had taken possession. The examining attorney may have had in mind that he was examining about the whole herd of 1,200 sheep covered by the mortgage, but the language used in the examination seems to limit the investigation to the herd of 714 sheep taken into possession by the bank. Not anything was said in the former case by either of the attorneys or the witness on direct or cross-examination that directly referred to any other sheep. Had his attention been called in the previous suit to sheep other than the 714, the witness might have answered in a manner to have created a conflict, but as to this we do not know, because the questions were not asked. An answer should have been allowed to the second question, since it might have developed a reply which would touch the credibility of the witness. There was no prejudice to appellant for the reasons stated above.

Elliot Bisel, a witness for plaintiff, was recalled on rebuttal and asked the following questions, to which objections on the ground that the evidence was not rebuttal, were made and sustained:

"Did Maxwell Seeley at any time during your conversation with him, make any claim to owning an interest in the sheep or in the wool produced from the Seeley sheep?"

"Who tied the fleeces during the shearing of the Seeley sheep in 1930?"

"During the shearing did you hear anybody make any reference or make any statement as to Max's wool?"

"Were you present at any other time when any branding of the Seeley sheep was done?"

We think no prejudice to appellant is shown by the court's rulings. The subject-matter of the first question had already been covered fully by the witness in plaintiff's case in chief wherein he testified that he had never heard Maxwell D. Seeley say that the sheep, or any part of them, belonged to him. The subject-matter of the second question was covered in the testimony in chief of the witness. The fourth question was preliminary in character, and, while the objection to it was sustained, the court permitted the witness to testify that he assisted in piling the wool and that it was kept all in one pile in 1930, contrary to the testimony of defendant and his witnesses to the effect that it was placed in two piles. He had testified in chief respecting the circumstances attending the branding of sheep in the years 1929, 1930, and 1931. The third question was also preliminary in character, calling for a "yes" or "no" answer. The answer might well have been permitted. If pursued further, after an affirmative answer, more would have to be shown in order to bind the defendant. The question was probably intended to prove a negative that no such statements were made, but, if so, it was not rebuttal of anything testified to by defendant or his witnesses. The witness Elliot Bisel had already, in his testimony in chief, testified that he had not heard anything said about keeping Maxwell's wool separate from the Joseph N. Seeley wool.

The witness George Arnold, who had testified for plaintiff in chief, was asked in rebuttal: "At that time did you, or at any time while you had these sheep, did you observe any of them earmarked with a crop off one ear and underslope in the other ear?" The objection that this was not rebuttal was sustained by the court. The witness, while testifying in chief, fully described the earmarks

and the sheep. It was clearly within the discretion of the court to restrict the rebuttal so as to prevent repetition.

Error is assigned to the giving of instructions numbered 5 and 6 and the refusal to give plaintiff's requested instructions Nos. 8 and 9. The purport of the instructions given and objected to was to cast on plaintiff the burden of proof, as was proper, and to restrict plaintiff's recovery to such sheep as were marked and branded with the marks and brands described in the chattel mortgage.

The purport of the requested instructions was to allow recovery, if plaintiff should recover at all, of exchanged sheep, or replacements, which were among those in the herd in dispute. Many of them were neither the indentical sheep separated from the Joseph N. Seeley herd nor their increase, but were other sheep supplied to replace Seeley sheep when separated from the Arnold herd where they had been under lease. The question involved in the instructions and requested instructions had to do with the number of sheep the jury might find plaintiff entitled to possess if the finding on the main issue was in favor of plaintiff. The verdict having been for defendant—no cause of action—the case was decided before there was any need to determine the number of sheep to which plaintiff was entitled. There was no occasion for the jury to consider or determine the matters covered in the objectionable instructions or the requests. Assuming, without deciding, that plaintiff's exceptions were well taken, yet there was no prejudice to plaintiff in the giving of the faulty instructions or refusal to give the correct requested instructions. It is a well-settled rule of law that error respecting instructions on the measure of damages is immaterial after a verdict for defendant of no cause of action. *Peterson* v. *Petterson*, 42 Utah 270, 130 P. 241; *Oliver* v. *Morgan* (Mo. Sup.) 73 S. W. (2d) 993; *Jones* v. *Whitaker*, 141 Ky. 484, 133 S. W. 223; *American Syrup & Preserving Co.* v. *Roberts*, 112 Md. 18, 76 A. 589; 4 C. J. 1043 and 1052; 54 C. J. 606. The present situation falls in the same category. The number of sheep to be awarded

plaintiff was a matter to be determined only after a finding that plaintiff was entitled to recover any sheep. This is clear from the wording of the requested instructions as well as those given.

Exception was taken to the refusal to give requested instruction No. 10 to the effect that, if defendant owned sheep which he permitted to be mingled with his father's herd and knowingly permitted them to be mortgaged to the bank, he is estopped from now claiming such ■ sheep. This subject-matter was sufficiently covered by instructions given that plaintiff was entitled to possession of all sheep described and included in the mortgage and decree of foreclosure together with the increase and wool of such sheep, and that the defendant had no valid claim to any of the sheep covered by the mortgage and decree of foreclosure.

Finding no error justifying a reversal of the judgment, it is affirmed, with costs to respondent.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.