## STATE v. BRUNO.

No. 6026.   Decided December 28, 1938.   (85 P. 2d 795.)

On rehearing, original opinion affirmed August 7, 1939.

For opinion on rehearing see 97 Utah 33, 92 P. 2d 1103.

*F. B. Hammond,* of Price, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty. Gen., for the State.

MOFFAT, Justice.

The defendant was tried in the District Court of Grand County on an information charging him with the commission of the crime of burglary in the second degree for breaking in and entering a railroad car at Thompson, Utah, on the night of April 14, 1937; and with the crime of grand larceny for having taken wool from said car belonging to one Charles Redd, exceeding $50 in value. The jury convicted him of grand larceny, but acquitted him of the charge of burglary. Under the evidence the wool alleged to have been stolen could not have been taken without burglarizing the car in which the wool was at the time of the alleged larceny or burglary. Defendant was sentenced to the state penitentiary. His motion for a new trial was denied. He has appealed to this court.

Errors assigned by appellant may be grouped under four headings: (1) That there is insufficient evidence to warrant a conviction. (2) That the court erred in permitting the information to be amended by inserting the partnership name, La Sal Livestock Company, in the place of the name of one of the partners, Charles Redd, as the alleged owner of the wool in question. (3) The court erred by improperly admitting certain testimony. (4) Comments alleged to have been made by the trial judge were improper. We shall consider these assignments in their order.

There is no dispute as to the ownership of the wool, except that provoked by assignment 2, supra, nor is there any conflict in the evidence that certain wool had actually been stolen. The identity of the felon, however, is the matter in controversy here. There is no direct evidence that appellant stole the wool in question. There is evidence to the effect that part of the stolen property was found in his possession.

Section 103-36-1, R. S. Utah 1933, defines the crime of larceny. This section under which defendant was convicted reads:

> "Larceny is the felonious stealing, taking, carrying, leading or driving away the personal property of another. Possession of property recently stolen, when the person in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt."

The first sentence defines the crime. The second sentence is an attempt to establish a rule of evidence. This court has heretofore struggled with an interpretation of the second sentence of the above statute. In the case of *State v. Bowen*, 45 Utah 130, 143 P. 134, cited by both parties to this action, the court among other things said [page 135]:

> "We have a statute (Comp. Laws 1907, § 4355) [now Sec. 103-36-1, R. S. Utah 1933] which provides that 'possession of property recently stolen, when the party [now 'person'] in possession fails to make a satisfactory explanation, shall be deemed *prima facie* evidence of guilt.' Under that statute, *in the absence of direct evidence of the taking*, the state, to make a *prima facie* case, is required to prove the larceny, recent possession in the accused, and an unsatisfactory explanation. *State v. Potello*, 40 Utah 56, 119 P. 1023; *State v. Converse*, 40 Utah 72, 119 P. 1030." (Italics added.)

Appellant contends that there is an insufficiency of evidence to warrant conviction. The following reasons are assigned:

> "A. There is no evidence that the appellant was at or near the railroad car at Thompson, Utah, on the night of the 14th and 15th of April, 1937 when wool was alleged to have been stolen from said car.

"B. There is no evidence that the appellant acted in conjunction with any person or persons, or aided or abetted any person, in stealing and carrying away wool from said railroad car.

"C. There is no evidence that the appellant was operating the Ford V8 pickup, or any truck or automobile that was backed up to within a short distance from said railroad car from which the wool was alleged to have been stolen.

"D. There is no evidence that the appellant left his cabin at Thompson, Utah, on the night of the 14th or 15th of April, 1937, except that he, in company of Gus Morris, left the said cabin together and were gone not to exceed five minutes and they returned with a bottle of whiskey.

"E. There is no evidence that the shoes worn by appellant on or about the 14th or 15th day of April, 1937, made any of the tracks that appeared at and around said railroad car.

"F. There is no evidence that the appellant was ever in the station house of the D. & R. G. Railroad Co., at Thompson, Utah where said company keeps its car seals in consecutive order. [The evidence shows that one was taken and put on the door of the box-car from which the wool was alleged to have disappeared.] [This is a collateral matter]

"G. There is no evidence that the appellant ever had in his possession, or ever saw, the railroad car seal before it was exhibited in the court, which seal was placed on the door of the railroad company's car from which wool was alleged to have been stolen. [This is a collateral matter]

"H. There is no evidence that the appellant knew, or had any reason to believe, that there was any wool in any railroad car at Thompson, Utah on or about the 15th day of April, 1937.

"I. There is no evidence which proves beyond a reasonable doubt that the Ford V8 pick-up in possession of the appellant on the 14th and 15th of April, 1937, was the vehicle that made the tire tracks at or near the railroad company's car from which wool was alleged to have been stolen.

"J. There is no evidence that the appellant ever stole, carried away, or had in his possession, or knew anything about the two sacks of wool numbered 56 and 65 found in the Chidester warehouse at Green River, Utah, which wool was taken from said railroad car at the same time that sack 47 [the subject of the controversy in this case] was alleged to have been stolen by appellant.

"K. There is no evidence which proves beyond a reasonable doubt that the wool taken from the appellant's warehouse in Price, Utah by

the sheriff of Grand County, Utah, was the same wool that was in sack number 47 and stolen from said railroad car. [There is a conflict in the expert testimony as to whether or not this was the wool of the La Sal Livestock Co.]

"L. There is no evidence that the appellant did steal, take and carry away from the possession of the La Sal Livestock Company, any wool, at any time, and from any place.

"M. There is no evidence *which proves beyond a reasonable doubt* that appellant ever had in his possession any property recently stolen *which possession was not satisfactorily explained.*" (Italics added)

We have carefully studied the record. We are unable to reconcile the finding of the jury with the evidence in the case. We have kept in mind the rule followed by this court in the case of *State* v. *Gurr,* 40 Utah 162, 120 P. 209, 39 L. R. A., N. S., 320. This case, cited by both parties to the case at bar, laid down the following rule:

"If the evidence is such that all reasonable minds should arrive at the conclusion that the explanation is reasonable and satisfactory, then, and then only, does it become a question of law to be determined by the court. If, however, after a full, fair, and impartial consideration of all of the evidence relating to the explanation, reasonable minds may differ and may thus arrive at different conclusions with regard to whether it is reasonable and satisfactory or not, the finding of the jury must control." 40 Utah at page 168, 120 P. at page 211.

The Gurr Case, supra, has been cited with approval in the later case of *State* v. *Dubois,* 64 Utah 433, at page 436, 231 P. 625.

There is no evidence to prove that the defendant took the wool in question from the railroad car or elsewhere. The case hangs upon the point of possession. There is conflicting evidence coming from expert witnesses to the effect that the wool found in defendant's possession shortly after the alleged asportation or theft is said to have been committed was the wool of the La Sal Livestock Co. In the Gurr Case, supra, the court pointed out that there were abundant circumstances relating to the appellant's explanation of his

possession from which different minds might draw different inferences or conclusions, which distinguishes it from the instant case. In view of the circumstances, the court concluded that the finding of the jury as to the defendant's guilt in the Gurr Case was supported by the evidence.

The evidence of the state in the instant case is circumstantial and is insufficient to uphold the burden of proof which remains with the state in spite of that provision of the statute declaring that:

> "Possession of property recently stolen, when the person in possession fails to make a satisfactory explanation, shall be deemed *prima facie* evidence of guilt." (Italics added) 103-36-1, R. S. Utah 1933; *State* v. *Barretta*, 47 Utah 479, at page 489, 155 P. 343.

The contention is as to the reasonableness or unreasonableness of appellant's explanation of possession of the alleged stolen property. Where an explanation is given the state has the burden of proving that the explanation is unreasonable.

The testimony of L. S. Hayward sets forth appellant's alleged explanation of his possession of the questioned wool as follows:

"Q. And after you got to the county jail in Price, Mr. Hayward, what did you do then? A. We questioned Mr. Bruno in regard to some wool in storage at Price.

"Q. Can you state the gist of that conversation? A. We asked Mr. Bruno in regard to the wool that was in the Norton warehouse.

"Q. State, as near as you can, what you asked him and the answers he gave. A. I asked Mr. Bruno what he knew about the wool that was in this warehouse of C. H. Norton's, that was in small gunny sacks, and he told me he knew nothing about it.

"Q. Did you have any conversation then as to whether he had been in Price on the 15th of April? A. I did.

"Q. What was that conversation? A. I asked him he had been in Price on April 15th, and he stated that he had not.

"Q. And what was said in the next conversation you had with him after the first? A. I asked him if he knew anything about the wool that was in the Norton warehouse, and he stated that he did not.

"Q. And did you ever have any other conversations with him, that night or the next morning? A. I asked him about the wool that was in the warehouse again, and he says that he had brought the wool in there and placed it in the warehouse the early morning of the 15th, and that he had bought the wool from a man named Ray W. Smith.

"Q. At that time, Mr. Hayward, will you state whether or not you asked him when he bought the wool from Ray W. Smith? A. Yes, I did.

"Q. And what did he say to that? A. He stated that he bought the wool at Thompson, Utah, at the cabins where he and his wife was staying at around five thirty A. M. the morning of April 15th.

"Q. Did you ask him how much wool he bought? A. Yes, I did.

"Q. And what did he state to that? A. He stated fourteen or fifteen sacks.

"Q. Did he say anything as to the amount he had paid for that wool? A. Yes, he did.

"Q. What did he say he had paid? A. Thirty dollars.

"Q. At that time did he offer you or show you anything indicating what he had paid for the wool? A. He did.

"Q. And what did he show you? A. He showed a copy of a check in his book.

"Q. Will you read what that says? A. 'April 11, 1937. Number 625 P. Amount, $30.00. Order of Ray W. Smith, 110 Pounds of wool.' [Defendant's exhibit I, from which the above is quoted, is the check given to Smith. It is apparent the date is an error as the check and receipt book from which the check was torn indicates that there were three checks with consecutive numbers preceding the check in question all dated April *14th* 1937.]

"Q. Can you just tell what was said at that conversation concerning the purchase of the wool down at Thompson? A. Mr. Bruno told me this man called at his cabin at Thompson Utah; that he was in bed, Mr. Bruno; that he rapped on his door, and he got up, and the man stated he had some wool for sale, and he asked him how much wool he had, and he said he had fourteen or fifteen sacks, small sacks; that the wool was sitting on the ground at the time Mr. Bruno stood in the door of the cabin, and that he bought the wool from this Ray W. Smith for thirty dollars; and that he never looked at the wool or weighed the wool."

As to the purchase of the wool, the time and place, Mrs. Bruno corroborated the above statement. It is established by

the evidence that Ray W. Smith was not a fictitious person. Colzani, the service station attendant, cashed the check for $30, for Mr. Smith; R. H. Jacobshagen directed a stranger answering Smith's description to Bruno's cabin; Sheriff Skewes testified that he wired to Butte, Montana, for Ray W. Smith as a witness in the case and received the following telegram from the Montana Sheriff: "R. W. Smith not at LaSal Hotel, left in March. Signed Sheriff Lawrence Weir."

The apparent inconsistency in Bruno's testimony when he denied that he knew anything about the wool in C. H. Norton's warehouse is easily explained by the fact that he had no wool in the Norton warehouse as such, but did have some wool in a part of the same building used by him as a warehouse for storing wool purchased by him in his business as a wool buyer.

The explanation of the defendant's purchase and possession of the fourteen gunny sacks of wool was, as a matter of law, satisfactory, in any event it cannot be said to be unsatisfactory. Reasonable minds might not differ as to that matter. Bruno was in the wool buying business. He was not at the place from which the wool was taken but was at his cabin at the time the state alleged and attempted to prove the wool was stolen. His testimony in the latter regard is corroborated by others. He bought wool estimated at 110 pounds for $30. There is no evidence of any conspiracy between Smith and the defendant. The state failed to show an unsatisfactory explanation. On the contrary the defendant presented a satisfactory explanation that is not refuted or otherwise questioned. Such being the case, the ruling of this court in the case of *State* v. *Barretta*, 47 Utah 479, 155 P. 343, 346, we regard as controlling. This case has been cited with approval in following more recent cases: *State* v. *Sawyer*, 54 Utah 275, 285, 182 P. 206, and *State* v. *Kinsey et al.*, 77 Utah 348, 352, 295 P. 247. The court, in the Barretta Case, held [page 346]:

"* * * as we said in the Potello Case, in the absence of other evidence, to make a prima facie case required proof of three things, the

*larceny, recent possession in the accused,* and an *unsatisfactory explanation* of his possession. When these are shown, the court is not justified in withholding the case from the jury. But *if* only the larceny is shown and recent possession in the accused, that is not sufficient to justify a submission of the case, and does not warrant a conviction." (Italics added)

Possession of recently stolen property alone is not sufficient. The state must supply proof of an unsatisfactory explanation of possession of recently stolen property and proof of the alleged larceny as well. The explanation was reasonable, in harmony with the circumstances, and unimpeached must be taken as satisfactory. There is no evidence connecting the defendant with the larceny when the possession of recently stolen property is eliminated as it must be. Where possession alone has been shown, this court has said in *State* v. *Kinsey,* supra, 295 P. 249:

"But mere or bare possession when not coupled with other culpatory or incriminating circumstances, does not alone suffice to justify conviction." (Citing cases)

Appellant next assigns that the court erred in permitting the information to be amended by inserting the partnership name, "LaSal Livestock Company" in the place of the name of one of the partners, "Charles Redd," as the alleged owner of the wool in question. Respondent, in support of his action, refers us to Section 105-21-17, Laws of Utah, 1935, page 225, which reads:

"Whenever it is necessary in an information, indictment, or bill of particulars, to make any averment as to or to describe any personal property belonging to several partners or owners, it is sufficient to refer to or describe such property as belonging to any one or more of such partners or owners without naming them all, or to state that any one or more of such partners or owners had a right of possession of such property without naming them all."

It appears from the evidence that Charles Redd was partner and half owner of the LaSal Livestock Company at the time of the alleged larceny. As to the amendment in this

regard we think the position of the state is well taken. Appellant cited in support of his assignment the cases of *State v. Jensen*, 83 Utah 452, 30 P. 2d 203, and *State v. Van Cleve*, 5 Wash. 642, 32 P. 461. We have read these cases and find that in neither instance do they have to do with partnership property. In view of the provision of the Utah Statutes relating to the matter, the court was justified in permitting the amendment—as a matter of fact no amendment of the complaint was necessary under a proper interpretation of the terms of the statute.

Appellant's third assignment is that the court erred by improperly admitting certain testimony of Mr. Morris, on cross-examination by the District Attorney, with respect to his having seen appellant with a black fleece of wool in his possession at the shearing corral at Thompson on April 14th. The objection in the record is that the question propounded was not proper cross-examination, irrelevant and immaterial. Appellant now contends in his brief that the propounded question was not within the direct examination. Was the questioned cross-examination, in view of the fact that the trial court is permitted a wide discretion with respect to cross-examination, within the direct examination? It appears from the direct examination that Mr. Guss Morris was examined on direct examination about his seeing the appellant on April 14th and about his association and connection with him on that day. On cross-examination he was interrogated about seeing Bruno on the 14th with a bag containing a black fleece. A black fleece having been found with the alleged stolen wool, this was objected to as prejudicial since the black fleece was not included as part of the wool alleged to have been taken from the railroad car. The case of *John A. Malia, State Bank Com'r, v. Seeley*, 89 Utah 262, 57 P. 2d 357, states on page 269 of 89 Utah, 57 P. 2d on page 360, the rule of this court with regard to the extent of cross-examination:

"A party has a right on cross-examination to draw out anything which would tend to contradict, weaken, modify, *or explain* the testi-

mony given by the witness. *In re Bryan's Estate,* 82 Utah 390, 25 P. 2d 602. The extent of cross-examination rests largely in the sound discretion of the trial court, and its rulings will ordinarily not be disturbed, *unless* there has been an abuse of discretion or *where prejudice is shown."* (Italics ours.)

This is a border line situation. Prejudice may have resulted from the cross-examination. Defendant was not charged with stealing a black fleece on the 14th. As the case must be reversed on other grounds, we need not determine the question. On a new trial it should be avoided.

Appellant's fourth and last assignment of error relates to certain alleged improper comments of the trial judge. The comments referred to are:

"This was at a time prior to the commission of the offence." and "This testimony and examination was made, was it, before the commission of the crime?" Appellant claims these statements by the court constituted prejudicial error, citing *People* v. *Howland,* 13 Cal. App. 363, 109 P. 894, *People* v. *Tomasovich,* 56 Cal. App. 520, 206 P. 119, *State* v. *Dixson,* 80 Mont. 181, 260 P. 138; and argues further that this objection may be raised for the first time on appeal, citing *State* v. *Gleason,* 86 Utah 26, 40 P. 2d 222.

We agree, as does the state, that the court erred in that it did not insert the word "alleged" before the words "offense" and "crime" in its comments. We must now determine whether or not such error was prejudicial.

In *People* v. *Howland,* supra, we find the following, which does not support appellant's theory [page 895]:

"In the case before us, owing to the absence of the evidence, we cannot say that the use of the word 'murder' prejudiced the defendant, since his defense may have been an alibi, and it may have been admitted that a 'murder' was committed."

Here an offense or crime may have been committed. The language of the court, though unfortunate, did not in any way connect the defendant with the offense or crime referred to.

In the case of *People* v. *Tomasovich*, supra, the court said [page 123]:

"Of course it is not proper for a trial court to state in the presence of a jury during the progress of a trial that any material or important fact has been proved. Such a statement would clearly involve a trespass upon the domain of fact and an invasion of the function of the jury."

As we view the situation, the remarks made by the trial judge in the case at bar would not have had such an effect on the jury.

The third case relied upon by appellant in support of his last assignment is the case of *State* v. *Dixson*, supra, wherein the court laid down the following rule [page 150]:

"* * * a new trial will not be granted unless it clearly appears that the error complained of actually prejudiced the defendant in his right to a fair trial * * *."

It does not "clearly appear" in the instant case that defendant was prejudiced. The cause should be reversed on other grounds. The statements of the trial judge were not prejudicial. There is no need to determine the further question as to whether or not such objection may be raised for the first time on appeal.

We think the evidence insufficient to warrant a conviction, appellant's motion for a new trial should have been granted.

This opinion failed to receive the support of a majority of the court as now constituted and therefore the decision results in an affirmance of the judgment of the trial court.

LARSON, J., concurs.

FOLLAND, Chief Justice (dissenting).

I dissent from the opinion of Mr. Justice MOFFAT for the reason that under the rule quoted by him from *State* v. *Gurr*, 40 Utah 162, 120 P. 209, 39 L. R. A., N. S., 320, I must conclude that the explanation offered by the defen-

dant, Bruno, as to the possession of the wool in question, was not one that all reasonable men should say was "reasonable and satisfactory." The question, therefore, was one for the jury and did not become a question of law for the court. Mr. Justice WOLFE has sufficiently set forth the evidence on which my opinion rests.

WOLFE, Justice (dissenting).

It seems but common sense to say that when one is found in possession of recently stolen property and gives an unsatisfactory explanation as to how he came into possession there is much likelihood that he either stole it or knowingly received stolen property; and if he is guilty of one or the other, the law lays it on him to distinguish. Section 103-36-1, R. S. Utah 1933, was meant to make the law in this regard square with common sense. If the defendant was found in possession of stolen property and gave an unsatisfactory explanation, it would be incumbent on him in the court room to repair the damage such explanation had done to the presumption of innocence with which the law clothed him or run the risk of being found guilty by the jury if the case, after all the evidence was in, went to the jury. Conduct which reasonably constitutes indicia of guilt may be constitutionally made to constitute a prima facie case. That it may compel the defendant to produce evidence in order to counter its effect does not contravene due process. There is just as much danger that society may render itself helpless to convict criminals by throwing around a defendant so much immunity in its anxiety to protect the individual against the might of government as there is danger that by relaxing the protection afforded the individual by the due process clause we may sacrifice individual liberties to the interests of society. Always in this field of due process the matter of finding the proper point of balance cannot be escaped.

Assuming the principle laid down in *State* v. *Gurr,* supra, to be correct, I cannot agree that "the evidence is such

that all reasonable minds should arrive at the conclusion that the explanation [of Bruno] is reasonable and satisfactory." The court's opinion holds, in effect, that the explanation of accused's possession of the recently stolen wool was so strong and convincing that no reasonable mind could have found it unsatisfactory. Assuming the Gurr Case to be good law, this is the quantum of proof accused must have given in order to be entitled to a directed verdict of acquittal. Although I cannot be the judge of whether my own mind is a reasonable one, I do not believe the explanation offered in behalf of the accused was such that no reasonable man could find that it was other than satisfactory.

That the explanation was not of itself satisfactory is plainly evidenced by the fact that the opinion of the court attempts to explain wherein and why the explanation was satisfactory. If the explanation needs explaining, it cannot be so convincing that no reasonable mind could refuse to do the explaining and conclude that the explanation of possession did not satisfactorily account for it.

The following facts appear from the testimony advanced by Bruno as an explanation: (a) Bruno twice denied knowing anything about wool in the Norton warehouse in Price and later admitted that it was his; (b) Bruno twice denied having been in Price the morning of April 15th, but later admitted that he had been there to take a load of wool to the Norton warehouse (or the portion of it which he used); (c) It is claimed that defendant paid for the wool by check made out on the 15th, but that check is dated April 11th; (d) Bruno, an experienced wool buyer, paid $30 for wool at 5:30 A. M., without looking at it or weighing it.

The court's opinion attempts to explain away (a) and (c). But is it our province to advance what might be a reason for Bruno's inconsistencies or denials? Are we not importing in our decision our idea of what might explain a discrepancy when such is for the jury? And if we may, is the reason which the main opinion advances as an explana-

tion for Bruno's denial really borne out by the evidence? Is it a valid explanation even granted it is within our province to tender this explanation? The opinion explains that Bruno properly denied knowledge of wool in Norton's warehouse because Bruno had put the wool in question in *his* portion of the warehouse. The possibility of lending this protection to the accused is removed by the more specific testimony of Hayward on cross-examination (Tr. 130) where it appears that Bruno at first denied knowing anything about wool *in his portion* of Norton's warehouse:

"Q. Now, later on you had another conversation with him and you asked him or told him that you had been down and examined some wool *in his portion of the warehouse,* that is right, isn't it? A. That is correct.

"Q. And then you asked him where he got it? A. Yes.

"Q. He told you he bought it? A. *He did not.* After the first two or three questionings *he told us he knew nothing about the wool."* (Italics added.)

Mr. Justice MOFFAT explains away the dating of the check as of April 11th by saying it was a mistake. The jury might well have so found; but can this court say that no reasonable mind could believe that it was not a mistake but was intentionally done to provide an "out" in case trouble arose over the stolen wool?

Justice MOFFAT does not attempt to explain Bruno's denial that he was in Price on April 15th. This failure alone might convince a reasonable man beyond a reasonable doubt of the accused's culpatory possession.

It is strange for a wool buyer to buy fourteen sacks of wool without looking at it, unless he knew he was getting such a good price that it was a bargain regardless of quality. Bruno paid almost 30 cents a pound, according to his story and the notation in his check book that he bought 110 pounds of wool. A wool expert testified that wool of this quality and in this condition should command from 30 to 34 cents a pound. If Bruno believed he was buying 110

pounds of wool at 5:30 A. M. from a stranger for $30 he acted carelessly and a reasonable mind might well regard such an explanation as unsatisfactory. But the record produces an important contrary fact which might have interested the jury, if not this court. The wool in the fourteen gunny sacks actually weighed 313 pounds, according to J. B. Skewes, the sheriff. This would explain why Bruno would buy the wool without examining or weighing it, but does not explain why "110 pounds" was written on the check stub. Perhaps that check was for other wool, or perhaps the check was intentionally misdated, or perhaps other wool was added to that claimed to have been purchased. But it is not for this court to speculate. If reasonable minds could differ as to whether this was a satisfactory explanation, the case, under *State* v. *Gurr*, supra, was rightly submitted to the jury on that question.

The explanation of the accused might have been found unsatisfactory for any of the four reasons mentioned, viz., (a) denying twice any knowledge of wool in the Norton warehouse and later admitting it was his; (b) twice denying having been in Price the morning of April 15th and later admitting that he had gone there to take a load of wool to the Norton warehouse where the stolen wool was found; (c) claiming that the check dated April 11th paid for wool bought on the 15th when the check stub noted "110 pounds of wool" and the amount found in the warehouse, apparently the same wool, weighed 313 pounds; and (d) buying wool for $30 at 5:30 A. M., without looking at it or weighing it.

The explanation to me seems unsatisfactory. Believing that I have a reasonable mind, I am forced to the conclusion that another reasonable mind might find it unsatisfactory and therefore the question was properly submitted to the jury.