# STATE v. BRUNO.

No. 6026. Decided August 7, 1939. (92 P. 2d 1103.)

For former opinion, see 97 Utah 17, 85 P. 2d 795.

*F. B. Hammond,* of Price, for appellant.

*Joseph Chez*, Atty. Gen., and *Zelph S. Calder*, Deputy Atty. Gen., for respondent.

McDONOUGH, Justice.

A rehearing was granted in this case pursuant to Section 20-2-3, R. S. U. 1933, under the provisions of which the concurrence of three justices is necessary to pronounce a judgment, such concurrence not having been reached on the original hearing. The views of the members of this court as constituted at the time of such hearing are published in 97 Utah 17, 85 P. 2d 795 et seq., to which opinions the reader is referred for some of the evidentiary details which, since there published, it will not be necessary to set out here.

The defendant was found guilty of the crime of grand larceny after trial on an information charging burglary in the second degree and grand larceny. The burglary count alleged that he broke and entered a railroad car at Thompson, Utah, on the night of April 14, 1937; the larceny count, that he stole from said car wool, exceeding $50 in value, belonging to one Charles Redd.

The question which divided the court on the first hearing was whether the evidence was sufficient to warrant a conviction. This was narrowed to that of whether it could be said as a matter of law that the explanation made by the appellant of his possession of property recently stolen was satisfactory. Confined further by the decision of this court in the case of *State* v. *Gurr*, 40 Utah 162, 120 P. 209, 39 L. R. A., N. S., 320, the question upon which there was a divergence of opinions was whether the evidence was such that all reasonable minds should arrive at the conclusion that the explanation was reasonable and satisfactory.

Appellant was a wool buyer. He resided with his wife at the time of the alleged crime at Helper, Utah. On April 14th he with Mrs. Bruno went to Thompson, Utah, where they hired a cabin. Most of that afternoon Bruno spent at a corral at Thompson. On the evening and during a part at

least of the night he was at the cabin with his wife. Witnesses Morris and Johnson visited him at the cabin. They and the appellant's wife testified that Bruno was drinking and playing cards there during the evening. It was on this night some time between the afternoon of the 14th and 11 a. m. of the 15th that the car in question was broken into and three large sacks of wool weighing 280, 295, and 284 pounds, respectively, were stolen. There is no dispute as to the larceny having been committed. Among the evidentiary facts relative to the larceny were marks near the door of the entered railroad car indicating that the missing sacks had been dragged along the ground in the direction of automobile tire marks which evidenced that a car had been driven off the highway to receive the stolen wool. The sheriff and the railroad inspector who testified for the state stated that upon observing these tracks they started looking for a car with tire treads resembling the marks.

Appellant had been using for more than a month a Ford pick-up truck with a stake body belonging to one C. H. Norton. He had driven in this truck to Thompson on April 14th. It was near the cabin where he was staying the night before and the early morning after the railroad car was broken into. On the 17th or 18th of April the sheriff and the railroad inspector saw this Ford truck outside the cabin at Thompson. They testified that the tires were such as would leave the marks observed near the railroad cars. The marks on the ground were described as being made by rear tires with three rings around the tire and some squares on the sides and by front tires that were smooth. The sheriff and inspector testified that the tires on the Ford truck were of that description. Later the two accosted appellant, who was in the truck with his wife, and, questioning him as to the license plates on the vehicle, they asked him to accompany them to Price. He did so. At the county jail there occurred the conversations, testified to by state's witnesses, wherein appellant gave his explanation of his possession of the wool which the state contended was stolen. Such explanation,

respondent contends, the jury was justified in rejecting as unsatisfactory. Bruno was asked what he knew about the fourteen gunny sacks of wool in the warehouse of C. H. Norton at Price. He answered that he knew nothing of them. This denial of knowledge of such wool was repeatedly made by him. Finally he said he bought it from a man named R. W. Smith. This man Smith, he stated, came to his cabin at 5 or 5 :30 a.m. on the morning of April 15th, knocked on the cabin door, and awakening Bruno asked if he bought wool, saying that he had fourteen or fifteen gunny sacks of it to sell. Bruno coming to the door saw the gunny sacks of wool standing on the ground outside the cabins and without weighing or examining it bought it for $30. Smith was a stranger to him. Payment for the wool was made, he said, by draft on R. C. Elliott Co. for whom appellant was authorized to make purchases of wool.

During the early part of the conversation had by the officers with Bruno the latter denied that he was in Price on April 15th. Later, he stated that he brought the wool to Price on that morning. The detail of such conversations, as testified to by one of the witnesses for the state, is given in the opinion written by Mr. Chief Justice Moffat on the previous hearing.

At the trial appellant did not take the witness stand, but Mrs. Bruno testified to the facts stated by him in his explanation relative to the purchase from Smith and the details thereof. She also stated that Bruno did not leave the cabin during the night of the larceny except for a few minutes with another witness to procure a bottle of whiskey. The witnesses Morris and Johnson testified that Bruno was at the cabin while they were there or until about midnight. Witness Morris, called in rebuttal by the state, testified that he observed the Ford truck outside the Bruno cabin at about 11 :30 p.m. on the night of the 14th and that at said time the stake body was intact; that he saw it the next morning "some time after sun up" and that the stake body was broken.

The evidentiary details are thus set out in view of the assignment that the evidence is insufficient to justify the verdict and to show the setting of the appellant's possession of the stolen wool. An explanation which might be satisfactory to a reasonable mind, absent culpatory circumstances, might be unsatisfactory in the presence of such circumstances.

The evidence relative to Smith's being a reality is detailed in the opinion of the Chief Justice, referred to hereinbefore. This evidence we shall assume is such as to compel a finding that Smith was not a fictitious person. Therein, also, is set out a summary of the evidence relative to the cashing, on April 15th, of the $30 check by a service station attendant and the explanation of the wife of appellant relative to its being misdated.

In view of all the circumstances we do not think the jury were bound, as reasonable men, to accept appellant's explanation of his possession as satisfactory. His denial of any knowledge concerning the fourteen sacks of wool at the warehouse of C. H. Norton, the jury could, and probably should, regard as being a denial of conscious possession of the stolen property, and being contrary to fact, as evidencing culpatory knowledge; and they might as reasonable men view such denial as a strong factor in denying credence to the subsequent explanation of his then admitted conscious possession.

The explanation of this denial, which is offered by the appellant, is certainly not such as to compel acceptance. The wool was found in a room in the building occupied by C. H. Norton as a warehouse, which room was used exclusively by appellant in which to store his wool. Appellant argues that the questions asked him were not concerning wool in his own warehouse or his portion of the particular warehouse, hence his denial should not give rise to any inference. Answers to such contention fairly leap from the record. First, one of the witnesses testified that he made the same denial concerning knowledge of

the wool when he was asked about that in his portion of the warehouse. Secondly, it was abundantly clear that appellant knew C. H. Norton, whose car he was driving, and that he must, under the circumstances, have known that Norton was occupying the other portion of the warehouse. Further, he was asked not merely concerning knowledge of wool in the warehouse but of "the fourteen gunny sacks of wool" therein. His explanation revealed that he brought the fourteen sacks to the warehouse just three days before the date of the explanation. To say that the jury should necessarily conclude under these circumstances that appellant when questioned did not know what building or what wool he was being asked about, would be to require such ready credulity on the part of its members as it is safe to say is not a requisite to efficient jury service. Clearly, they would be justified in concluding that he knew what particular wool he was being questioned about when he denied knowledge thereof.

Appellant's denial of his presence in Price on April 15th, followed by his admission contained in his explanation that he brought the wool to the warehouse at Price on that morning might reasonably be viewed by the jury in the same light as his denial of possession.

The jury was not bound to believe that the check, assertedly given in payment for the wool, was made out on the 15th rather than the 11th, though they may reasonably have believed it. Though they believed it to have been made on the 15th—because the check stubs preceding the stub of the $30 check were dated the 14th—they would not be thereby precluded from disbelieving that it was given for 313 pounds of wool, when the stub indicated it was given for 110 pounds.

The explanation of appellant's obtaining possession at such proximity to the time and place of the commission of the larceny under the circumstances related by him, when viewed in the light of his denial of conscious possession hereinbefore discussed, is such that the jury as reasonable

men were not bound to accept it as satisfactory. The court did not err in refusing to find the explanation satisfactory as a matter of law and in submitting the question and that of the guilt or innocence of the accused to the jury.

Three other errors are assigned: (1) that the court erred in permitting the information to be amended by inserting the partnership name, "LaSal Livestock Company" in place of the name "Charles Redd," one of the members of said partnership, as the alleged owner of the wool; (2) that the court erred in making, during the course of the trial, certain statements prejudicial to the defendant; and (3) that the court erred in overruling objections to questions asked the witness Morris by the district attorney on cross-examination.

Assignments numbered 1 and 2 above are adequately covered in the opinion of the Chief Justice, hereinabove referred to, and the results therein reached and the reasons given for overruling them are adopted as the view of the court relative thereto.

Assignment designated No. 3 is based on alleged error in the reception of evidence. Morris testified as a witness for the accused that the latter spent most of the afternoon of April 14th at and in the vicinity of witness' corral and that the witness visited the accused at his cabin that evening. On cross-examination the district attorney propounded the following question: "You saw him on that day carry a black fleece of wool out of your corral, Mr. Morris, didn't you?" This question was objected to as "not being proper cross-examination, incompetent, irrelevant, and immaterial." To the subsequent questions relative to the circumstances of appellant's carrying away the fleece, singularly, no objection was made. The objection to the question should have been sustained. It was not cross-examination. It had no tendency to contradict, modify, explain, or in any way elucidate the direct testimony of the witness. However, we do not think that the defendant was in any way prejudiced. The question was not objectionable

on any of the other grounds. There was a single black fleece of wool found with the wool in the fourteen sacks. The state could have shown that appellant had such a fleece in his possession on the afternoon prior to the alleged larceny. The overruling of the objection was not such error as would justify a reversal.

We find no reversible error in the record. The judgment should be affirmed. Such is the order.

WOLFE, and PRATT, JJ., concur.

MOFFAT, Chief Justice (dissenting).

For the reasons stated in my opinion on the former hearing reported in 97 Utah 17, 85 P. 2d 795, in connection with the following reasons, I dissent from the prevailing opinion written by Mr. Justice McDONOUGH.

The evidence does not even remotely or by any possible inference connect the defendant with the asportation of the three sacks of wool. The case against defendant hangs solely upon the possession by the defendant of a portion of the property recently stolen.

As indicated in the prevailing opinion, there were three sacks of wool removed from the car during the night of the alleged asportation.

The only evidence relating to how the defendant came into possession of the wool is that related by the sheriff, as to Bruno's explanation. That explanation is the wool was bought from R. W. Smith, at his cabin on the morning of the 15th of April. That he bought 14 or 15 gunny sacks of wool and paid therefor. These 14 or 15 gunny sacks of wool, when weighed, were found to contain more wool than the sack of which it was claimed to be a part. Bruno's wife corroborated the sheriff's statement as to the purchase of the wool. The state attempted in no way to show that the defendant did not acquire possession as he said he did. The explanation, assuming it to be true as we must, stands uncontradicted. That Bruno made inconsistent, or even false

statements as to having wool at a warehouse had, if any, only a very remote bearing as to how he got the wool.

I fear the majority opinion has wandered into by and forbidden circumstantial fields and has given weight to collateral circumstances having no bearing upon the explanation of how the defendant acquired possession. The place of possession is one thing. The matter of whether stored or not is another. The time, how or from whom possession was acquired is still another.

In the instant case, the crux of the matter of guilt or innocence of the defendant turns upon whether the explanation he gave is an unreasonable one and the state had the burden of proving by the same degree of certainty that the explanation was unreasonable as it did of all the other elements necessary to attach guilt upon the defendant.

In addition to the question upon the facts, the opinion goes too far in holding, at least impliedly if not expressly, that defendant must assume the burden of showing his explanation to be reasonable and relieving the state of the burden of showing whatever explanation offered was unreasonable. The conviction and judgment should be set aside and a new trial granted.

LARSON, Justice.

I concur in the views expressed by Mr. Chief Justice MOFFAT in his dissenting opinion.