## STATE v. DUBOIS et al.

No. 4038.    Decided December 3, 1924.    (231 Pac. 625.)

1.  LARCENY—FELONIOUS INTENT TO STEAL MUST BE ESTABLISHED.
    To constitute "larceny," the taking of property of another must
    be with felonious intent to steal which must be established
    by circumstances of taking or other proof.                    .

2.  CRIMINAL LAW—FELONIOUS INTENT QUESTION FOR JURY, WHERE
    EVIDENCE MIGHT LEAD TO DIFFERENT CONCLUSIONS.  If evidence
    is such that all reasonable minds should conclude that taking
    of property of another was without felonious intent, question is
    one of law, and verdict of guilty should be set aside, but if
    reasonable minds may differ and arrive at opposite conclusions,
    finding of jury must control.[1]                    .

3.  LARCENY—EVIDENCE HELD TO SUSTAIN CONVICTION OF STEALING
    CALF.  Evidence *held* to sustain conviction of felonious stealing
    calf belonging to another, as against defense that taking was
    in good faith· and with honest belief that calf was property of
    defendants.

Appeal from District Court, Seventh District, Carbon
County; *F. E. Woods,* Judge.

John E. Dubois and another were convicted of grand
larceny, and they appeal.

AFFIRMED.                                    ·          ·

*McCarty & McCarty,* of Salt Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *L. A. Miner,* Asst. Atty.
Gen., for the State.                    ·

CHERRY, J.

---

[1] *State* v. *Morrell,* 39· Utah, 498, 118 P. 215; *State* v. *Chynoweth,*
41 Utah, 354, 126 P. 302; *State* v. *Gurr,* 40 Utah, 162, 120 P. 209,
39 L. R. A. (N. S.) 320.

Defendants were charged with feloniously stealing "one calf, the property of John E. Brown," on September 29, 1921, at Grand county, Utah. They were tried before a jury, found guilty of grand larceny, and sentenced to imprisonment in the state prison. From the judgment against them, they have appealed. The principal ground urged against the validity of the judgment is that the evidence is insufficient to sustain the verdict.

The taking of the calf from the pasture of Brown by the defendants, at the time and place alleged, was admitted; but it was contended by way of defense, that the defendants took the calf in good faith, and with the honest belief that it was their own property, and that therefore no theft was committed. The only question in dispute was the bona fides of the defendants' claim, and the evidence relating to that subject was somewhat conflicting. Without attempting to refer to or review the whole of the evidence, it is enough to say that there was substantial evidence on the part of the state to the following effect:

Brown owned a large tract of land lying west of and adjoining the main public road, and about two miles northwest of the town of Moab. On this land, cattle belonging to various persons were pastured from time to time. The land was fenced, and the usual entrance to it was at a place on the main road opposite and near Brown's house. Previous to and on the date of the alleged larceny, Brown had a number of cattle, including the calf in question, pasturing on his land. The calf in question was a red heifer calf about 5 months old, without brands or marks. It was what is called a "doggie," or motherless calf.

On September 29, 1921, the defendants, with the permission of Brown, went to the latter's land to look for some cattle claimed by them to be missing from a bunch of cattle mortgaged by them to a bank, and which the bank had previously kept in Brown's pasture. They entered Brown's land from the main road at the usual place of entrance near Brown's house, and proceeded to the westerly part of the land, where they found the calf in question. It is not

claimed that the calf was one of the cattle which had been mortgaged. They roped the calf and drove or led it across a slough in a southerly direction and off Brown's land, and across other private land, by a circuitous and unusual route, and to a side road or lane, which ran easterly intersecting the main road mentioned at a point some distance south of Brown's land. At a point on the side road or lane, while the defendants wer driving the calf in an easterly direction, Mrs. Brown, the wife of the complaining witness was seen approaching from the east in a wagon, whereupon the defendant John E. Dubois "loped up and went into Miller's," thus avoiding meeting Mrs. Brown. Mrs. Brown passed the other defendant and the calf without comment. The defendants then put the calf in a corral belonging to J. P. Miller, who resided on the side road or lane. They thereupon rode to Moab, left their horses, and returned to the Miller corral in an automobile, into which they put the calf and carried it to Moab, where they placed it in their own corral in the east part of town. Shortly thereafter the sheriff took possession of the calf and arrested the defendants. In the afternoon of the day the calf was taken, and obviously at the time when the defendants came to Moab to exchange their horses for the automobile, the defendant John E. Dubois met Brown on the street, but did not speak to him at all.

At the trial the defendants contended that they had lost a calf similar to the one taken from Brown, and that they took the calf from Brown's pasture with the honest belief and claim that it was their own. The calf lost by them, however, was admitted to have been about 15 months old at the time, while the calf taken from Brown's pasture was shown to have been but 5 months old. In this connection it was shown that the defendant John E. Dubois had had considerable experience in the cattle business, resulting in the inference that he could readily discern the difference between a calf 15 months old and one 5 months old.

The defendants introduced considerable evidence tending to explain their conduct and to support their claim to the

animal taken. The case was submitted to the jury upon "proper instructions that, if they found the defendants took the calf in question in good faith and with an honest belief that such calf was their property, then even though the calf was actually the property of Brown, there would be no larceny, and the verdict should be not guilty. With the question thus submitted, the jury returned a verdict of guilty. The question to be decided by this court is not whether or not the jury should have found the defendants guilty, but whether the evidence is sufficient, as a matter of law, to support the verdict.

The mere taking of personal property belonging to another does not, of course, constitute larceny. The taking must be with the felonious intent to steal, and this element must be established by the circumstances of the taking or other proper proof. As a general rule, the question of whether or not the taking is felonious, is a question of fact to be decided by the jury. But the rule is not absolute. The taking may be under such circumstances that there is no legal warrant for the jury finding it to be felonious, as in *State* v. *Morrell*, 39 Utah, 498, 118 P. 215; *State* v. *Chynoweth*, 41 Utah, 354, 126 P. 302.

It is not easy to state a rule by which it may be determined in each particular case whether the evidence is or is not sufficient in this respect, to support a verdict of guilty. If the evidence is such that all reasonable minds should arrive at the conclusion that the taking was without felonious intent, then the question becomes one of law, and the verdict of guilty should be set aside. But if, after a consideration of all the evidence, reasonable minds may differ and arrive at opposite conclusions, the finding of the jury must control. *State* v. *Gurr*, 40 Utah, 162, 120 P. 209, 39 L. R. A. (N. S.) 320.

In the case at bar, there were circumstances shown in connection with the taking of the calf by the defendants which, we think, justified the jury in finding felonious intent. The fact that the calf was taken out of the pasture, not through the usual outlet, but by a roundabout route which avoided

observation by others; the apparent effort of one of the defendants to avoid meeting Mrs. Brown in the lane; the change from the slow and conspicuous method of driving the calf on the road to the rapid and more concealed transportation in an automobile; the failure of Dubois, after leaving the calf in Miller's corral, and meeting Brown in Moab, to speak to him respecting his claim to the calf; and the substantial difference between the age of the animal claimed to have been lost by defendants and the one taken by them—were all circumstances tending to     3
impeach the integrity of defendants' claim of right,
and to show a felonious intent to steal. It is the conclusion of this court that the evidence is sufficient to sustain the verdict.

Additional errors are assigned upon the sustaining by the trial court of objections by the district attorney to certain questions propounded by defendants' counsel to the prosecuting witness on cross-examination. We have carefully examined the record and find no error in this respect. The questions complained of were in most cases allowed to be answered in a slightly variant form, and those which were not answered were clearly not cross-examination.

The judgment is affirmed.

We concur: WEBER, C. J., GIDEON and FRICK, JJ., and JOS. H. ERICKSON, District, Judge.

THURMAN, J., did not participate herein.