# STATE v. PETERSON.

No. 6919.   Decided November 30, 1946.   (174 P. 2d 843.)

See 36 C. J. Larceny, sec. 516; 31 Am. Jur. 660. Relationship to prosecuting witness as disqualifying juror, note, 18 A. L. R. 375.

*Young & Bullen,* of Logan, *J. D. Skeen,* of Salt Lake City, and *George A. Halverson,* of Los Angeles, Cal., for appellant.

*L. E. Nelson,* Dist. Atty. of Logan, *Grover A. Giles,* Atty. Gen., and *Calvin L. Rampton,* Asst. Atty. Gen., for respondent.

LARSON, Chief Justice.

Verlo J. Peterson was convicted of grand larceny upon information charging him with stealing one heifer from Willis McBride. He appeals and complains that the evidence was insufficient to justify the verdict; that the court erred in the admission and in the rejection of certain evidence; that the court erred in instructing the jury and in refusing to grant a new trial for the misconduct of a juror who failed to reveal that he was a brother-in-law of the complaining witness's sister.

The evidence introduced and relied upon to support the charge was as follows:

The heifer alleged to have been stolen was owned by Willis McBride who in the spring of 1944 entrusted the animal to John Baxter, an agister, for ranging and pasturing. About the middle of October 1944, Baxter brought this heifer along with five others from the range and placed them in a field belonging to the defendant. Fifteen or 20 days later Baxter transferred the six heifers from the Peterson field to a pasture owned by Otto Clawson. During the course of transfer, Baxter, not knowing who was the owner of the heifer, put a slit in her ear for future identification. The morning immediately following the change of pasture, Peterson came to Baxter and claimed the heifer; Baxter told him to take the heifer if she belonged to him. There is no direct

evidence of asportation by Peterson or his connection therewith, but two days later Baxter went to Otto Clawson's field to count the cattle, and observed that the heifer was not there. On or about the first day of December 1944, McBride questioned Baxter as to the whereabouts of the heifer and Baxter told him about the conversation with Peterson on November 1 in which Peterson claimed the heifer. McBride went to Peterson who denied ever talking to Baxter and further denied taking the heifer. A few days later McBride reported to Baxter that Peterson had denied the conversation and the taking of the heifer from Otto Clawson's field. This caused Baxter to search for the heifer and he found her in Lehi Clawson's corral. Baxter called McBride and Lehi Clawson and the three men clipped the heifer and found McBride's brand; they also found a tag in the left ear that had "Robert Peterson" imprinted upon it. Robert Peterson is the son of the defendant. Lehi Clawson testified that he obtained the heifer via a trade with the defendant in which he exchanged 10 cows for nine heifers, including this one of McBride's, and $385 in cash. The defendant was present and negotiated the trade; it is undisputed that McBride's heifer was one of the nine.

Defendant's principal complaint is that the court refused to grant a motion for a directed verdict because there was not sufficient evidence of a larceny; and that the evidence affirmatively shows there was no felonious intent.

When a larceny case should be decided by the court and when it should be submitted to the jury is well settled and the rules have been repeatedly laid down by this court. See *State* v. *Brooks,* 101 Utah 584, 126 P. 2d 1044, 1046. We quote from that opinion:

"If a prima facie case has not been made the court should not submit the matter to the jury. If a prima facie case has been made the court submits to the jury the question of defendant's guilt. *State* v. *Barretta* [47 Utah 479, 155 P. 343]; *State* v. *Potello* [40 Utah 56, 199 P. 1023]; *State* v. *Bruno* [97 Utah 33, 92 P. 2d 1103]."

This poses the question: Did the state make out a prima facie case of larceny? A prima facie case is one based upon evidence sufficient to raise a question for determination by the jury. As is often put, if the evidence favorable to the state, with all reasonable inferences and intendments that can be drawn therefrom, could sustain a verdict of guilty the cause should be submitted to the jury. See *Nielson* v. *Hermansen*, 109 Utah 180, 166 P. 2d 536. With this rule in mind, we will now briefly review the evidence introduced by the state. McBride owned the heifer; he entrusted her to Baxter as an agister. Baxter in the course of events placed the heifer with others in the Peterson field. A few days later Baxter transferred the cattle, including this heifer, to the Clawson field; soon thereafter, Peterson came to Baxter and claimed the heifer. Baxter told Peterson that if the heifer was his to go ahead and take her. Two days later Baxter noticed that the heifer had been removed from the field. Three weeks later Peterson traded to Lehi Clawson nine head of heifers, which included McBride's heifer and one belonging to James G. Christensen. December 7, 17 or 18 days after the trade, McBride asked Peterson if he had received a holstein heifer from Baxter with a slit in her ear. Peterson denied receiving or taking this heifer, and urged McBride to accompany him to his field where he sat in his car while McBride examined the cattle. After it was found that the heifer had been in Peterson's possession and that he had traded the animal to Clawson, Peterson came to McBride claiming that it was all a mistake, and wanted to know how much McBride would take to settle. No attempt was made to explain the claimed mistake.

The evidence of asportation is ample, but the mere taking of personal property of another does not, of course, constitute larceny. The taking must be with felonious intent. As a general rule, the question of whether the taking is felonious, is a question for the jury. See *State* v. *Dubois*, 64 Utah 433, 231 P. 625. An exception is where there is no legal warrant for the jury finding it to be felonious. *State* v. *Morrell*, 39 Utah 498, 118 P. 215; *State*

v. *Chynoweth,* 41 Utah 354, 126 P. 302; *State* v. *Dubois,* supra. It is well settled by this court that when reasonable minds may differ and arrive at opposite conclusions, the finding of the jury must control. *State* v. *Gurr,* 40 Utah 162, 120 P. 209 39 L. R. A., N. S., 320. We conclude that there are circumstances presented here which would justify a jury in finding that the defendant had a felonious intent. The court was correct in submitting the question to the jury.

Peterson next contends that the admission by the trial court of evidence that a heifer belonging to James G. Christensen was traded by the defendant to Lehi Clawson as one of the nine traded on November 21, 1944, was prejudicial error and sufficient reason for reversal. This evidence was not admitted to show the commission of another crime, but was admitted for the purpose of showing a felonious intent. Certainly a number of wrongful, unlawful possessions would tend to nullify the defense of a claim of mistake. We discussed this same question in *State* v. *Kappas,* 100 Utah 274, 114 P. 2d 205, 207. We quote from that opinion:

"On the question of proof of other offenses, the rule is that a defendant, on trial for a certain offense, must be convicted if at all by evidence showing he is guilty of that offense only and proof of his commission of other unconnected crimes must be excluded. Exceptions to the rule are found in such situations as those in which the prosecution is permitted to prove the identification of the accused, motive, intent, plan or knowledge. Where a felonious intent is a necessary element of the crime charged, proof of other activities may in some cases be admitted to show guilty knowledge and that the act was not done innocently or by mistake."

Peterson denied taking the heifer and claimed that the animal was in his possession by mistake. To sell one heifer in a group of nine that belongs to another might be a mistake, but when you trade two heifers belonging to some one else the possibilities of mistake and innocense are somewhat lessened. The testimony of wrongful possession of the Christensen heifer and the selling of this second animal to Lehi Clawson tend to nullify and combat the defense of

mistake and tends to prove guilty knowledge and a felonious intent on the part of the defendant. This evidence was properly admitted for such purpose.

The defendant further complains that the court erred in instructing the jury. The instruction complained of reads as follows:

"You are instructed that if you find and believe from the evidence beyond a reasonable doubt that a larceny has been *proved, recent possession of the stolen property in the accused,* and a failure to make a satisfactory explanation of his possession, or a false or untruthful or fictitious or improbable or unreasonable explanation thereof would be sufficient to justify a verdict of guilt, if upon such proof when considered in connection with all the facts and circumstances in evidence, *that it was he* who feloniously stole, took, carried or drove away the property of the party named in the information, in this county and state, and at or about the time mentioned in the said information." (Italics added.)

Defendant argues that this instruction infers that a larceny has been committed and in substance tells the jury that there was sufficient evidence to sustain a conviction. We find merit to this contention.

This instruction should not have been given to the jury. Mere possession of property does not warrant the giving of an instruction concerning recently stolen property. There must be additional proof that the property was stolen. Evidence of possession of property recently stolen and failure to make satisfactory explanation is admissible primarily for the purpose of identifying the thief and not for the purpose of proving that the property had been stolen. There must be proof of larceny before the recent possession statute, 103-36-1, U. C. A. 1943, is brought into play.

In the instant case, there is no issue as to who took the property. It is admitted that Peterson took the heifer. The principal issue is: Was this heifer stolen? This instruction is clearly inapplicable for it implies that the property has been stolen, which is the principal issue posed by this case. For a detailed discussion of this question, see *State* v.

*Barretta,* supra. In view of what this court held in the Barretta case, we think further discussion is unnecessary.

Peterson strenuously contends that the trial court erred in denying his motion for a new trial when the court's attention was brought to the fact that Alonzo J. Smith, the jury foreman, was a brother-in-law of the sister of the complaining witness. Peterson admits that the juror could not have been dismissed for implied bias and that there is no evidence of expressed bias. His position is—had he known of the marriage relationship existing between Smith and McBride, he would have removed him from the jury with a peremptory challenge. He claims Smith's failure to answer a question asked by the court when being examined as to his qualification to sit as a juror deprived him of his right to properly exercise his peremptory challenges. The court asked the talesmen as a group:

"Are you related to Mr. McBride or Mr. Peterson through marriage or blood relationship?"

The juror remained silent. It cannot be doubted that in the spirit of fairness, Smith should have revealed the family connection existing between himself and McBride to the court but his failure to do so is not a violation of the statute. Sec. 105-31-19 U. C. A. 1943, as far as material here, reads as follows:

"A challenge for implied bias may be taken for all or any of the following causes, and for no other:

"(1) Consanguinity or affinity within the fourth degree to the person alleged to be injured by the offense charged, or on whose complaint the prosecution was instituted, or to the defendant."

This juror was not related to the complaining witness within the fourth degree nor at all. Affinity is the product of marriage, the relationship between the husband and the consanguinei of the wife, or between the wife and the consanguinei of the husband. A husband is not related to the affines of his wife nor is she related to the affines of his brother. Since the affines of Smith's brother are not

related to Smith and vice versa, McBride, the complaining witness, and Smith, the juror, were not related through marriage or blood relationship. See *Louisville & N. R. Co.* v. *Holland,* 173 Ala. 675, 55 So. 1001; *Lowman* v. *State,* 161 Ala. 47, 50 So. 43. This definition of affinity is a strict legal interpretation and the laymen probably do not construe the relationship within such narrow limits. While the described action or inaction of this juror did not evidence the sensibility for the proprieties, such that suspicion of his impartiality might be avoided, it was not such as amounted to misconduct, bias or prejudice under our statutes. The trial court would probably have been justified in granting a new trial but error in this respect is not evident.

The final assignment of error insisted upon by the defendant is made with respect to testimony of good character. A witness was called who testified that he had lived for a number of years in the same community with the defendant and was acquainted with his general reputation as to being a law-abiding citizen, that his reputation for being a law-abiding citizen in the community was good. On cross-examination the witness testified that he had never talked to any one concerning the defendant's reputation nor had he heard the defendant's reputation discussed by any one; he testified further that the opinion was his own partly formed from his dealings with the defendant. The testimony was stricken on the ground that the witness had not shown he had sufficient knowledge of the defendant's general reputation in the community but was testifying only in regard to his personal opinion. We think the court erred in striking this evidence and thereby denied the defendant a substantial right. The witness was qualified when it appeared that he had lived in the same community with the defendant for a number of years and that he was acquainted with the general reputation of defendant. The fact that he stated he had never heard the defendant's reputation discussed and that he based his conclusions partly on personal dealings with the defendant is not sufficient reason for striking the testimony. The mere statement of a

witness that he has or has not certain knowledge is not conclusive. Competency of such testimony is determined by the consideration of all the testimony offered or given. The testimony here in question was negative evidence of good character which this court and many others have held is admissible as evidence of good character. When a person has been personally acquainted with another for a considerable length of time, and has been in a position where he probably would have heard the other's reputation discussed, were it the subject of comment, and had never heard it questioned, and who never had occasion to question it, such person may testify to the good reputation of the other based upon the fact that he has never heard anything against the person. For a very scholarly and comprehensive discussion of this question, see Judge Straup's opinion in *State v. Barretta*, 47 Utah 479, 155 P. 343, in which similar facts and issues are decided. In view of what is said in the Barretta case, we find the law is so well settled that we deem further discussion unnecessary. To refuse a person the right to introduce character evidence may in some instances deprive him of his sole defense. Such an invasion of a substantive right cannot be permitted.

The judgment is reversed and the case remanded for a new trial.

McDONOUGH, Justice, concurs.

PRATT, Justice.

I agree with this decision to the extent hereinafter indicated. Undoubtedly the evidence offered to prove possession and an unsatisfactory explanation of possession is offered primarily for the purpose of identifying the thief, and not for the purpose of proving that the property was stolen. Naturally one is not concerned with the identity of a thief until there is proof that there was a theft. It is possible that evidence to support proof of possession and unsatisfactory explanation thereof may have probative value for another purpose—that of proving a felonious in-

tent in the original taking of the property. When it has such probative value it is admissible for such purpose quite aside from its probative value as to identity of the thief. In this case, however, I do not agree that the evidence was sufficient to go to the jury upon the question of a felonious intent in the original taking. The heifer was taken under an expressed claim of right. To seriously question that claim the evidence should be sufficiently strong to lead reasonable minds to a belief that the claim of right was merely a camouflage or fraud to cloak an intent to steal the heifer. The evidence falls far short of that in my estimation.

One more point: I think a witness is justified in concluding from a lack of the discussion of the reputation of an individual in his community, that his reputation is good, and so testifying; but when he grounds his opinion upon his dealings with that individual, rather than upon facts which evidence reputation, he is not giving an opinion of the individual's reputation, but is giving his opinion of the individual himself. To put it another way: Personal dealings between the accused and the witness have probative value in emphasizing the acquaintanceship between the two as being such that the witness would very likely have knowledge of accused's reputation either from hearing it discussed or from the negative standpoint of never hearing anything against accused. But, because those dealings may have turned out satisfactory or unsatisfactory to the witness is no foundation for an opinion by the witness as to accused's reputation. I think this is what the lower court had in mind when he ruled out this reputation evidence.

I concur in the holding of the prevailing opinion that the conduct of the juror Smith was not such as to amount to misconduct, bias or prejudice under our statutes.

WADE, Justice.

I concur with Chief Justice Larson's opinion as far as it goes but in two respects I think it should have gone farther.

I think the evidence was insufficient to show a felonious

intent and therefore the court should have directed a verdict of "Not Guilty." When Baxter removed the cattle from defendant's field, defendant went to him and claimed this heifer. This indicates that the claim was made in good faith. Had he known that it was not his heifer and took it with the intention of stealing it, he would not have called it to Baxter's attention that he was taking it but would have done so with as little notoriety as possible. Under all the facts and circumstances disclosed by the evidence, defendant's actions in taking this heifer are consistent with an honest belief that this heifer belonged to him. Members of his family testified that prior to the spring of 1944, on account of ill health, defendant had disposed of his sheep and at the request of his son, during that spring purchased about 40 head of black and white heifers about the age, color and size of the one in question; that the fences were bad and these heifers became mixed with others; that among the heifers purchased was one bought from a man named Jensen in Collinston; that the heifer which he took had frozen ears and otherwise resembled the Jensen heifer and that he took this heifer believing in good faith that it was the one he had purchased from Jensen. I believe that under these facts and all other surrounding facts and circumstances a reasonable mind could not be persuaded beyond a reasonable doubt that the defendant, at the time of the taking, knew this was not his heifer and took it with the intention of stealing the same.

I also agree, for the reasons stated in the prevailing opinion, that the court erred in instructing them on the question of unexplained possession of recently stolen property. I think it is an error to so instruct even in cases where the rule does apply. What constitutes a prima facie case is a question of law for the court to determine. Ordinarily the court determines that question by submitting the case to the jury on all the facts and circumstances of the case without pointing out what facts are sufficient to constitute a prima facie case, or by directing a verdict. There is no more reason why the court should point out to the jury

that unexplained possession of recently stolen property constitutes a prima facie case than that it should in any other case point out what facts it considers to be sufficent for that purpose. To do so in my opinion violates the well-recognized rule against the court commenting on the evidence. *Hawley* v. *Corey,* 9 Utah 175, 33 P. 695. *State* v. *Green,* 78 Utah 580, 6 P. 2d 177, as well as the rule against emphasizing parts of the evidence, *Jenkins* v. *Stephens,* 64 Utah 307, 231 P. 112. Also it is subject to the further objection, which was so ably pointed out by Mr. Justice Straup in *State* v. *Barretta,* 47 Utah 479, 155 P. 343, that the jury is apt to be misled into thinking that the court is instructing them that if they find the existence of the necessary facts on which this rule is based they *must* find the defendant guilty, rather than that they *may* so find only in case all of the facts and circumstances of the case convinces them of his guilt beyond a reasonable doubt.

WOLFE, Justice.

I concur. I think it would be clearer to the reader in treating of the non-blood or affinity relationship of the complaining witness McBride to the juror Smith to make the following comments:

As the Chief Justice says, affinity is the product of marriage, the relationship between the husband and the consanguinei (blood kin) of the wife, or between the wife and the consanguinei (blood kin) of the husband. However, the statement that "A husband is not related to the affines of his wife" is not entirely accurate because the husband's blood kin are at least some of his wife's affines and of course he is related to them.

In this case the complaining witness's sister was the wife of the juror's brother. The complaining witness is McBride. His sister we shall call Mrs. Carl Smith. The juror is Alonzo Smith. His brother we shall call Carl Smith.

Are Alonzo Smith and McBride related to each other by affinity?

Mrs. Carl Smith is related to the juror Alonzo Smith by affinity because he is a blood kin (brother) of her husband. Likewise, Carl Smith is related to McBride by affinity because McBride is a blood kin (brother) of his (Carl Smith's) wife. However, the affinity relationship goes only to the blood kin of a person's spouse or to the spouse of a person's blood kin. Therefore, as neither of these relationships exist between Alonzo Smith and McBride there is no relationship by affinity between them.