## PARRY v. HARRIS.

No. 5625.   Decided November 3, 1937.   (72 P. [2d] 1044.)

*Willard Hanson*, of Salt Lake City, for appellant.

*H. H. Halliday* and *Louis H. Callister*, both of Salt Lake City, for respondent.

JONES, District Judge.

Appellant was the defendant below in a breach of promise action. From an adverse verdict and money judgment, he appeals.

The complaint sets forth that respondent is an unmarried person, and that appellant is likewise single; that respondent is 20 years of age and the appellant 26; that they first met

in June, 1932, and immediately became fond of each other, which fondness soon developed into love; that about the 25th of July the appellant proposed marriage to respondent, representing that he was a man of substantial financial worth, high reputation, and unusual social standing, and that he would devote his life, his energies, his fortune and social standing to the welfare and happiness of respondent. That she had great confidence in him, believed his expressions of love and affection, and then and there consented and promised to marry him. That the parties thereafter announced their betrothal to their friends and acquaintances. That thereafter, at appellant's insistence and solicitation, respondent consented to sustain and did sustain the status of husband and wife with him, which state of affairs commenced shortly after the proposal and continued for about a year. That on or about the 26th day of July, 1933, the appellant, without justification, informed respondent that he would not marry her, and that ever since said date he has refused and still refuses to perform his part of the contract. That appellant's actions have caused respondent great and immeasurable anguish, mortification, injury to her affections, etc., to her damage in the sum of $25,000.

By answer, appellant admitted the residence of the parties, his single status and respondent's age allegation. Answering that portion of the complaint relating to the proposal of marriage, appellant alleged that the parties discussed marriage problems; that he stated that he was not in a position to marry any one; that he had no business profession or earned income, and, until such time as he could properly support and maintain a wife and family, he would be unable to marry; that respondent acquiesced and agreed to appellant's views in this regard; that his situation has not changed so as to warrant him offering marriage to any one; that respondent is an accomplished musician and stated to appellant that she never intended marrying any one until she was older and sufficiently proficient as a musician so as to be able to maintain herself; that when she did marry she ex-

pected to marry some one musically inclined, but that appellant was not so musically inclined; that subsequently respondent advised appellant that he should cease calling on her so she could follow her musical career and ultimately marry some one of a musical nature, and that he did, thereupon, cease calling on her. Appellant then denied the remaining allegations of the complaint not hereinbefore admitted, denied, or qualified, and prayed that respondent take nothing by her complaint. A reply was filed by which the allegations of the answer were denied.

The cause then came on for trial with the parties offering testimony in support of their respective pleadings. A motion for a directed verdict was denied. The jury was then instructed by the court, among other matters, that before respondent could recover they should be satisfied from a preponderance of the evidence that there was an actual offer on the part of the appellant to marry her; that she in good faith accepted said offer; and that appellant then refused to marry her after such promise on his part and acceptance and consent on her part. A verdict of $1,500 against appellant was returned. Upon the denial of a motion for a new trial, he appealed.

The assignments of error cover various rulings of the court relating to the admission of evidence in the proceedings during the trial; alleged errors committed by the court in its instructions; and asserted errors in refusing to instruct in accordance with the pleadings and the theory upon which the case was tried. We will treat these propositions in the same order.

It is first maintained that the court erred in striking from the record testimony of appellant of a remark allegedly made by respondent to him relating to the conduct of a girl friend whom he objected to respondent associating with during the time the parties were admittedly keeping company. The statement stricken was: "Well, she said that Marian had been going down to the Kenyon Hotel on various instances on drunken parties, and getting home

in an intoxicated condition and one night in particular her mother and father put her out of their home." Appellant contends that the answer "was competent to show the respondent's attitude towards and for that class of people and her knowledge of them, her desire to continue her associations with them as bearing on the question whether or not respondent repudiated the alleged marriage contract and told him that she desired his company no longer." The record discloses, however, that while this particular remark was stricken, yet that the trial court permitted Harris to delineate at length his objections to Miss Parry associating with certain of her friends, including her alleged statement to him, "Well, if that is the way you feel about it, why then quit." We feel that no error was committed in striking the statement in view of the fact that appellant was permitted to show respondent's reaction to his objection in her continuing with certain of her friends which was the only possible relevancy of the alleged incident. Trial courts are permitted to exercise a discretion in this regard. 2 Jones Com. Ev. 1903.

Appellant then complains that the court erred in refusing to strike a statement of respondent's while on the witness stand during which time she was describing her alleged mortification and feelings after appellant, according to her story, had refused finally to marry her. The statement was: "Usually when I go out in company someone always mentions that I am the girl who was supposed to marry Bransford Harris." The court was again correct in its ruling. In situations such as this, such statements are admissible.

"It does not follow because the writing or words in question are those of a third person not under oath that therefore, they are to be considered as hearsay. On the contrary, it happens in many cases that the very fact in controversy is whether such things were written or spoken, and not whether they were true; and in other cases such language are statements, whether written or spoken, may be the natural or unseparable concomitants of the principal fact in controversy." 1 Greenleaf Evidence § 100, and see also 3 Jones Com. Evidence 2251.

Appellant insists that the court erred in instructing the jury concerning the alleged sexual intercourse between the parties during the time they were keeping company. He maintains that there was no evidence in the record to justify any instruction whatsoever on this subject. The only direct testimony was given by respondent as follows: "She wanted to go (home from the apartment where plaintiff had testified the parties were alone) but he said 'No, let us sit down and talk awhile.' So we sat down and he said as long as we were already going to be married in a short time he could see no reason why we could not carry on that relationship, and other people did it. He said it wasn't anything out of the way, that other friends of his had carried out that relationship and I told him that I didn't want to because I had always been taught that such relationships only existed between married people. He said if I loved him I would and if I loved and believed in him and trusted him like I said I did, I would, and if I didn't I was old fashioned, and he overcame my will and I loved him and believed in him so much that I did, and trusted him so implicitly."

And again: "Well, I believed in him so, and when he told me [referring to the alleged refusal to marry] I had believed him and put all my love, and gave him all my love and everything I had, and then to have him turn around and betray me like that."

The foregoing evidence, being within the issue, was sufficient to justify the submission of the instruction. There could be no misunderstanding of just what plaintiff had in mind when she referred to "That relationship," and we accordingly find no error in that regard.

Turning to the next proposition, it is earnestly maintained that the court erred in refusing to instruct on appellant's theory that respondent herself declined to go through with the marriage contract because she elected to follow her musical career. Appellant had testified that he told respondent that a man should not contemplate marriage until he was able to support a wife. On this phase

of the case, the court instructed the jury as follows (after outlining the elements of a marriage contract) : "If you find from a preponderance of the evidence that the defendant promised to marry the plaintiff, whether a definite date for the marriage was fixed, or not, and that plaintiff in pursuance of said offer, if any, on the part of the defendant, in good faith consented to marry the defendant and that the defendant refused to marry the plaintiff or renounced his promise to the plaintiff, if any was made, then your verdict must be in favor of the plaintiff, unless you find from a preponderance of the evidence that the plaintiff herself was unwilling to go through with the contract. If on the other hand, you find from a preponderance of the evidence that the defendant did not offer or promise to marry the plaintiff, or, if he did so offer, the plaintiff did not accept said offer, or, if she did accept said offer, she was unwilling to go through herself with the marriage and repudiated the same, then you should find for the defendant, no cause of action."

An examination of this instruction and of the entire charge to the jury convinces us that the court not only submitted the case on the whole evidence adduced, but on appellant's theory of his evidence as well. *Hartley* v. *Salt Lake City,* 41 Utah 121, 124 P. 522. *Anderson* v. *Nielsen,* 43 Utah 564, 137 P. 152; *Pratt* v. *Utah Light & Traction Co.,* 57 Utah 7, 169 P. 868; *Morgan* v. *Bingham Stage Lines,* 75 Utah 87, 283 P. 160.

Appellant then asserts that the foregoing quoted instruction is nothing more than an abstract statement of the law in general terms which left to the jury the application of both law and fact. He cites the following Utah cases in support of his contention: *Smith* v. *Clark,* 37 Utah 116, 106 P. 653, 26 L. R. A. (N. S.) 953, Ann. Cas. 1912B, 1366; *Jensen* v. *Utah, etc., R. R. Co.,* 42 Utah 415, 132 P. 8; *Furkovich* v. *Bingham Coal, etc.,* 45 Utah 89, 143 P. 121, L. R. A. 1915B, 426; *Everts* v. *Worrell,* 58 Utah 238, 197 P. 1043. We agree with and reaffirm the holdings in these cases to the effect that it is the duty of the trial court

to decide all questions of law applicable to the evidence of the particular case avoiding mere lexical and abstract propositions of law. Applying this principle of law to the foregoing instruction, how can it be said that the same is too abstract and general? Certainly, the instruction covers the issue tendered by the appellant's pleading and evidence as to the respondent herself being unwilling to go through with the marriage in order that she might follow her musical career. We accordingly determine that the instruction was not subject to the objection in view of all the facts and circumstances.

Complaint is also made of the word "repudiated," as used in the instruction above, for the reason that the same was not properly defined. It is held, however, that the words of common understanding readily understood by every one of ordinary intelligence need not be defined, but in any event the aggrieved party is put to the duty of making a timely request for a definition, before he can be heard to complain. 14 R. C. L. § 31. The record fails to disclose any such request on the part of appellant. Moreover, the word is one of common usage, and was applied by the trial judge in its conventional sense in instructing the jury.

The failure of the trial court to grant appellant's motions for a directed verdict and a new trial is called to our attention, but as no argument on the facts is presented thereon, the same are deemed waived. 4 C. J. S., Appeal and Error, § 1318 h., j. The same rule must be applied to the remaining assignments of error which are not argued in the printed brief. *San Pedro, etc., R. R. Co.* v. *Board of Education, etc.,* 35 Utah 13, 99 P. 263; *Morris* v. *Salt Lake City,* 35 Utah 474, 101 P. 373.

As no error is found in the record, the judgment should be, and is, affirmed. Costs to respondent.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.

WOLFE, J., being disqualified did not participate herein.