## STATE v. PRETTYMAN.

No. 7055. Decided March 15, 1948. (191 P. 2d 142.)

See 35 C. J. S., False Pretenses, sec. 52. False pretense or confidence game through means of worthless check or draft, see note, 35 A. L. R. 344. See, also, 22 Am. Jur. 474.

*McCullough, Wilkinson & Boyce,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *Herbert F. Smart,* Deputy Atty. Gen., and *Brigham E. Roberts,* Dist. Atty., of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal from a judgment of the Third District Court convicting defendant of the crime of drawing a check against insufficient funds, with intent to defraud, in violation of Sec. 103-18-11, U. C. A. 1943.

The facts in this case are largely without dispute. The uncontradicted evidence shows that on March 22, 1946, the defendant was registered at Covey's Tourist Court under the name of Leland Douglas, and that he had been so registered there for about a month prior thereto; that during the time he was registered there he had been a regular patron of the Covey Coffee Shop; that on the date above mentioned he executed and cashed at the coffee shop a check in the amount of $20.00 drawn on the Uintah State Bank at Vernal, Utah; that neither at that time nor at any previous time had the defendant had any account or credit arrangement of any kind with the drawee bank; that the check was dishonored on presentation; that the defendant remained at the Covey Tourist Court for about eight days after executing the above-mentioned draft, but that he left before the dishonored paper was returned to the coffee shop.

The chief question in this case is whether or not defendant had an intent to defraud at the time he uttered the check. The evidence introduced by the defendant tended to show that he was engaged in a business enterprise with a Mr. Raymond, the exact nature of which is not shown by the record, but the general nature of which was apparently investment in oil lands in and around Vernal, Utah; that Mr. Raymond had promised that sufficient money would

be deposited at any bank which the defendant would designate by wire, and that he would honor any drafts within reason; that within 24 hours after issuing this check defendant sent a wire to Raymond in Seattle, Washington, with the expectation that Raymond would send to the drawee bank sufficient funds to meet the check; that Raymond never received the wire; that Raymond died thereafter, but when his wife learned of the situation she immediately sent funds to meet the draft, thus honoring her deceased husband's alleged agreement.

The assignment of error chiefly relied upon by defendant as grounds of reversal is that the court erred in denying defendant's motion to dismiss the action on the ground that the state's evidence was insufficient upon which to base a conviction.

In support of this proposition defendant first contends that he was charged

"* * * with intent to defraud Alvin B. McKean and Dean Kofoed, doing business as Covey's Coffee Shop * * *"

while the evidence shows that at the time of the alleged offense Alvin B. McKean had no interest in the Covey Coffee Shop except as an employee, and that his brother, T. Rex McKean, and Kofoed were the partners doing business as Covey's Coffee Shop. Defendant contends that this amounts to a fatal variance or failure of proof.

As far as appears from the record, this point is raised for the first time in the case in this court. It is without merit. Sec. 105-21-18(3), U. C. A. 1943, provides as follows:

"An erroneous allegation as to the person injured or intended to be injured shall not be material."

The name of the person or persons injured constitutes no part of the crime. It is included in the information for the purpose of better describing and identifying the act with which defendant is charged. So long as the particular act is sufficiently described so as to enable the defendant to prepare his defense and to permit a plea of former

jeopardy to be interposed in the event action is again brought, the information is sufficient and an error in name is not material. *State* v. *McKee*, 17 Utah 370, 53 P. 733; *State* v. *Leek*, 85 Utah 531, 39 P. 2d 1091. There has been no showing that defendant was prejudiced in the preparation of his defense, or that he is in danger of double jeopardy by reason of the mistake in name.

A more difficult question is raised by defendant's contention that there was no evidence of criminal intent. Section 103-18-11, U. C. A. 1943, which defendant was convicted of violating, insofar as material here, is as follows:

"Any person who for himself or as the agent or representative of another or as an officer of a corporation, willfully, with intent to defraud, makes or draws or utters or delivers any check, or draft or order upon any bank or depository, or person, or firm, or corporation, for the payment of money, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer or the corporation has not sufficient funds in, or credit with said bank or depositary, or person, or firm, or corporation, for the payment of such checks, draft or order, in full upon its presentation, although no express representation is made with reference thereto, is punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than 14 years.

"*The making, drawing, uttering or delivering of such check, draft or order as aforesaid shall be prima facie evidence of intent to defraud.*" (Italics ours.)

Defendant contends that the italicized portion of the above quoted statute creates a presumption, which disappears when rebutting evidence is adduced by the defendant, and therefore, since the state did not offer any rebutting evidence to the explanation offered by the defendant, there was no evidence of intent to defraud—an essential element of the state's case. The portion of the statute here in question, seems never to have been construed by this court. However, a similar provision of our larceny statute, Sec. 103-36-1, U. C. A. 1943, has been considered by this court many times. That statute provides as follows:

"Larceny is the felonious stealing, taking, carrying, leading or driving away the personal property of another. Possession of property

recently stolen, when the person in possession fails to make a satisfactory explanation, *shall be deemed prima facie evidence of guilt.*" (Italics added.)

In *State* v. *Potello,* 40 Utah 56, 119 P. 1023, 1028, defendant was convicted of the larceny of a horse. Mr. Justice Straup, who wrote the main opinion held that upon proof of the larceny, recent possession in the accused, and failure of the accused to make a satisfactory explanation, the state had made a prima facie case. The conviction was reversed on the ground that the state failed to prove a larceny, and that the evidence of defendant, though tending to show a larceny, showed that it was committed by someone else. In view of the court's holding that there was failure to prove one of the necessary elements necessary to bring the statutory provision of prima facie evidence of guilt into operation, any discussion of the effect or operation of the statute was probably mere dicta.

However, Mr. Justice Straup had this to say:

"Not that the jury, on such proven facts, though unrebutted or not discredited by circumstances, are required to convict if upon such proven facts they are not convinced beyond a reasonable doublt of the accused's guilt, but that they, upon such proven facts, if unrebutted or not discredited by circumstances, may presume or infer the further fact of the felonious taking by the accused, and if, upon all the evidence adduced, they are convinced beyond a reasonable doubt of his guilt, may convict."

In the case of *State* v. *Converse,* 40 Utah 72, 119 P. 1030, 1033, a companion case to the *Potello* case, the court discussed more fully the application and operation of the statute. In that case, defendant was convicted of the larceny of some plumes from a store in Ogden. The evidence adduced by the state showed that the plumes were unlawfully taken from the store; that about a week later defendant sold some of the plumes to a Salt Lake merchant; that several days later defendant offered to sell more plumes to the same Salt Lake merchant, who, being aware that the plumes were stolen, notified the Salt Lake police who arrested defendant.

Defendant told the officers that he had purchased the plumes from a hobo in Murray, who had them in a gunny sack. Defendant gave the officers false information as to his residence.

Defendant admitted that he was in Ogden on the week end when the plumes were stolen; that he had spent the week end there at the home of one Craig; that he had spent the entire time he was in Ogden with Craig; that he went from Ogden to Murray where he purchased the plumes from an "Asyrian or Portuguese looking" fellow who had the plumes in a gunny sack and was peddling them. Two other witnesses testified to having seen defendant purchase and pay for the plumes from an individual described as above.

In addition to the evidence above outlined, it was shown that defendant had told the Salt Lake merchant to whom he sold the plumes, that he had bought them for his girl but had a row with her and had decided to sell them. The state's rebuttal evidence showed that the train upon which defendant travelled to Ogden was on time, in contradiction to defendant's testimony that it was more than an hour late.

Defendant in that case, as the defendant in the case at bar, contended that the rebutting evidence was so strong that the prima facie case which the state had proved under the statute by proving larceny, recent possession, and unsatisfactory explanation, was wiped out. The court speaking through Mr. Justice Straup, treated the statute as creating a statutory presumption, but held that the presumption was not overthrown *even though the testimony of defendant was corroborated by two disinterested witnesses who were neither impeached nor discredited.* Said the court:

"If the direct evidence controverting the presumption is not conflicting nor uncertain, if reasonable minds may not differ with respect to the conclusion to be deduced therefrom, then undoubtedly the question is for the court. The jury, in such case, could not be permitted to disregard such direct evidence, or, as against it, base a finding of the fact upon the mere presumption. If, on the other hand, the direct evidence with respect to the presumed fact is itself in conflict or is uncertain, or if reasonable minds may differ with respect to

the conclusions to be deduced from the direct evidence, that is, if there is some direct evidence in support of the presumption and some against it, or if the direct evidence claimed to be against it is uncertain, or open to different conclusions, then the question of whether the ultimate fact should be found in accordance with the presumption or against it is for the jury."

### And again:

"If the evidence with respect to the explanation is uncertain, or is in conflict, or is open to different conclusions, or is in itself improbable or doubtful, or, as is often said, if reasonable minds may differ with respect to the conclusions or inference to be drawn from it, the question is one for the jury. If, on the other hand, the evidence with respect to it is consistent with innocence, is in itself reasonable and probable, and bears no mark of suspicion or fabrication, and is not contradicted by evidence other than the mere presumption referred to, then the jury may not disregard such evidence and determine the fact upon the mere presumption."

### In *State* v. *Barretta*, 47 Utah 479, 155 P. 343, 346, again speaking through Mr. Chief Justice Straup, we said:

"The Legislature adopted the statute which, as we said in the Potello Case, in the absence of other evidence, to make a *prima facie* case required proof of three things, the larceny, recent possession in the accused, and an unsatisfactory explanation of his possession. *When these are shown, the court is not justified in withholding the case from the jury.*" (Italics in last sentence ours.)

### And again:

"Of course, the jury, upon the matters alone which the statute declares is a *prima facie* case, may find the accused guilty, if they, upon such proof, are convinced beyond a reasonable doubt of his guilt. But just as certain is it that they, if not so convinced, are required to acquit him, though such matters may not even be disputed or contradicted by any evidence whatever."

For a discussion of the question here involved see also the opinion of Mr. Justice Ephraim Hanson, concurring in part, and dissenting in part, in *Peterson* v. *Sorenson*, 91 Utah 507, 65 P. 2d 12, 21. In that case, Sec. 42-1-54 of the Workmen's Compensation Act was involved:

*"Proof of the injury shall constitute prima facie evidence of negligence* on the part of the employer and the burden shall be upon the employer to show freedom from negligence resulting in such injury." (Italics ours.)

In the instant case, the statute provides that proof of certain facts (i. e., the other elements of the offense) shall be prima facie evidence of intent to defraud. The effect of the statute is to make proof of certain facts a prima facie case. The introduction of rebutting evidence does not *ipso facto* destroy or wipe out the state's prima facie case. Of course the defendant may introduce such strong evidence that no reasonable mind could disbelieve it—evidence so overwhelming that the court must say that as a matter of law the defendant has established a good defense. But this is true in every case, whether civil or criminal. It is not something unique or peculiar to this type of case merely because the statute in this case provides that proof of certain facts shall be prima facie evidence of another fact essential to the state's case. It applies in all cases. But before the case may be taken from the jury, the evidence adduced in behalf of the defendant, must, *at least,* be consistent with innocence, be reasonable and probable, *bear no mark of suspicion or fabrication,* and be uncontradicted. *State* v. *Converse,* supra.

It may be conceded that the defendant's evidence is consistent with innocence, that it is not improbable or unreasonable—at least not so improbable as to be impossible of belief—and that it is uncontradicted. But can we say that it bears no mark of suspicion or fabrication?

The check here involved was uttered in March, the defendant was arrested in June, and the check was not "made good" by Mrs. Raymond until August. These facts might well suggest to the minds of the jurors that there was no antecedent agreement between defendant and Raymond and that defendant persuaded Mrs. Raymond to come to his rescue after he got into trouble. The very fact that Raymond and defendant failed to keep in touch with one another

at a time when they were engaged in a joint business venture (for the financial support of which defendant relied entirely upon Raymond), casts some doubt and suspicion upon the authenticity of the explanation offered by defendant.

Prettyman's testimony was that he last saw Raymond in Salt Lake City in the latter part of January or early part of February, 1946, at which time Raymond agreed to cover drafts in any reasonable amount drawn by defendant. Some time thereafter, Prettyman received $300.00, and at another time $50.00, by wire from Raymond. Early in March, Prettyman talked with Raymond by telephone, Raymond being then in the Herald Hotel in Seattle. The check here in question was drawn the latter part of March, and according to defendant's testimony, he notified Raymond by wire the next day at the Hungerford Hotel, Seattle. He received no reply to this wire. He did not send any communication to the Herald Hotel, although that was where Raymond was living at the time Prettyman was last in communication with him. And although Prettyman was wholly dependent upon Raymond for funds to finance their business venture, the two men were never in communication after their telephone conversation of early March. Thereafter, it appears that neither was ever aware of the whereabouts of the other—a rather unusual situation, to say the least, in view of the fact that they were engaged in a business venture together.

The jury is entitled to draw on its general experience in life, and in analyzing defendant's explanation, it might have taken into consideration the fact that banks will not ordinarily honor the checks of persons having funds in such banks unless such persons have on file with the bank a signature card. So that even if Raymond had deposited funds in the drawee bank, Prettyman probably could not have drawn on them, without having first filed with the bank a signature card. The jury might take this into consideration and conclude that no businessman would enter into such arrangement as testified to by defendant.

With all of the above factors taken into consideration, it cannot be said that the defendant's evidence was so free of suspicion that a jury would be bound to believe it. The case was properly submitted to the jury.

Defendant next contends that the prosecuting attorney committed prejudicial error by frequent and improper reference to defendant's prior criminal record, and the fact that he was on parole.

On cross-examination defendant was asked, over objection of his counsel:

"What other names have you gone by, Mr. Prettyman?"

The subsequent examination revealed that besides going by the name of Leland Douglas, defendant had also used the name of L. D. Travers, which was really his own name with the surname left off. He denied the use of any other alias. We see no prejudice arising to defendant out of this question. *State* v. *Miller*, 164 Wash. 441, 2 P. 2d 738; *People* v. *Kelly*, 146 Cal. 119, 79 P. 846.

The District Attorney also asked this question:

"Weren't you arrested for leaving the state without permission under your parole?"

The defendant answered:

"It was in conjunction with that."

On motion of defendant's counsel, the answer was promptly stricken by the court, and the jury was admonished to disregard it. Defendant argues that striking the answer from the record would not erase it from the minds of the jury. If he felt that the error could not be corrected by striking the answer, he should have moved for a mistrial. Moreover, the prejudicial matter came in as a result of laxity on the part of defendant or his counsel. Had objection been made before the answer was given, instead of afterward, the answer would never have been given. Defendant is in no position to complain of this matter. There was no error in that regard.

Defendant also complains of various rulings on evidence. On cross-examination over defendant's objection, the prosecuting attorney was permitted to ask defendant how many other drafts he had drawn. In the recent case of *State* v. *Scott,* 111 Utah 9, 175 P. 2d 1016, it was pointed out that evidence of other and independent crimes of the same nature as that for which defendant is being tried is not admissible if it is relevant only for the purpose of showing defendant's disposition to commit such a crime. This is an exception to the overarching principle that all evidence having probative value is admissible. But evidence of other criminal or wrongful acts is admissible if it tends to prove any of the elements of the crime charged. *State* v. *Nemier,* 106 Utah 307, 148 P. 2d 327. In forgery and embezzlement cases, evidence of other crimes of the same nature is admissible to show criminal intent. *State* v. *Judd,* 74 Utah 398, 279 P. 953; *State* v. *Green,* 89 Utah 437, 57 P. 2d 750. The same rule should apply in insufficient funds checks cases. But in the case at bar, the prosecuting attorney did not establish that the other checks drawn by defendant were insufficient funds checks. It was thus left to the jury to infer that the other checks drawn by defendant were insufficient funds checks. We assume that by inadvertence the presecuting attorney neglected to complete his questioning on this point. However, we wish to point out that this might gravely prejudice the defendant in some cases, since the jury is left to draw inferences which may be unfair to defendant. The prosecutor should be careful not to leave points such as this "hanging in the air." However, it was not prejudicial error in this case. If the other checks uttered by defendant were in fact insufficient funds checks, no harm was done. On the other hand, if the other checks were in all respects good, defendant could have so shown on redirect examination. Not having done so, nor having offered to do so, he cannot now complain.

At the beginning of his case in chief defendant offered the deposition of Mrs. Raymond. Most of it was refused

at that time. However, after the defendant had testified, the deposition was again offered, and all of the testimony was received except a part of the answer to the last question, of which no complaint is made here. So even if the court erred in the first instance in refusing to receive part of the deposition (and this we doubt), such error was cured by admitting the excluded portions at a later stage of the trial.

·Other errors have been assigned, but not being argued in the briefs, they are deemed waived. *Parry* v. *Harris,* 93 Utah 317, 72 P. 2d 1044; *Duncan* v. *Hemmelwright,* 112 Utah 262, 186 P. 2d 965.

There was no error. The judgment is affirmed.

McDONOUGH, C. J., concurs.


WADE, Justice.

I concur with the result on the grounds pointed out in the prevailing opinion and as elaborated on by Mr. Justice Latimer to the effect that under the arrangements between Mr. Raymond and the defendant, even if Mr. Raymond had deposited the money in the bank to cover this check, no arrangements were made by defendant to have the bank pay this on presentation. However, I am inclined to believe with Mr. Justice Pratt that had such arrangements been made the evidence is such that all reasonable minds must entertain a reasonable doubt that defendant delivered this check with the intention to defraud. If such were the case then there was no question of fact for the jury to decide but only a law question for the court and it should have directed a verdict of not guilty.

Under Section 103-18-11, U. C. A. 1943, the delivery of a check with knowledge at the time thereof that the maker has not sufficient funds or credit with the drawee bank to pay such check in full upon presentation is made prima facie evidence of an intention to defraud. What constitutes

a prima facie case is always for the court and not for the jury to determine. *Peterson* v. *Sorenson*, 91 Utah 507, 65 P. 2d 12, dissenting opinion Utah Rep. page 529, Pacific Rep. page 22. If the court decides that a prima facie case has been made it submits the case to the jury but if it holds that such a case has not been established it directs a verdict. If the case is submitted to the jury they do not pass on the question of whether a prima facie case has been made, their only concern is whether the evidence convinces them that there is no reasonable doubt of defendant's guilt. If the jury concludes that there is no such doubt they should find the defendant guilty otherwise he should be acquitted. In all cases the jury should decide that question from the probative evidence adduced at the trial. A presumption is not and cannot be evidence, and to attempt to weigh it as such involves a mental operation which is impossible to comprehend. A presumption is not the fact on which it is based nor the inference to be drawn therefrom but is the legal consequence thereof. See "Some Observations Concerning Presumptions," 44 Harvard Law Review 906-934, and "Instructing the Jury on Presumptions," 47 Harvard Law Review 59-83, both by Edmund M. Morgan. That such is the law of this state see *State* v. *Green*, 78 Utah 580, 6 P. 2d 177, and other cases cited to that effect in Mr. Justice Pratt's opinion herein. However, it must be kept in mind, that if the facts on which the presumption is based inherently have a logical tendency to prove the ultimate fact which is presumed therefrom, such facts are in evidence and may always be considered and weighed by the jury for whatever they are worth in determining the ultimate fact. See citations to Harvard Law Review above. For the court to instruct the jury that certain facts are prima facie evidence of other facts, or that the proof of certain facts raised a presumption or inference that another fact exists, has a tendency to confuse the jury by instructing them on a subject about which the jury has no concern, and would probably mislead them to believe that proof of the first set of

facts would require them to find the second fact, and would probably violate the rule against commenting on the evidence. See *State* v. *Barretta,* 47 Utah 479, 155 P. 343; *State* v. *Sawyer,* 54 Utah 275, 182 P. 206; *State* v. *Mellor,* 73 Utah 104, 272 P. 635; *State* v. *Donovan,* 77 Utah 343, 294 P. 1108; *Peterson* v. *Sorenson,* 91 Utah 507, 65 P. 2d 12, Ephraim Hanson, dissenting, Utah Reports page 529, Pacific Reports page 22; *State* v. *Bruno,* 97 Utah 33, 92 P. 2d 1103; *State* v. *Brooks,* 101 Utah 584, 126 P. 2d 1044; *State* v. *Hall,* 105 Utah 162, 145 P. 2d 494; and *State* v. *Peterson,* 110 Utah 413, 174 P. 2d 843, concurring opinion by this author.

Some of these cases hold that the giving of such instructions though improper are not reversible error unless prejudice is shown. See *State* v. *Donovan,* supra; *State* v. *Sawyer,* supra; *State* v. *Mellor,* supra, holds such instructions not improper under certain circumstances; and *State* v. *Hall,* supra, held to give such instruction improper but if instruction had been different it would have been more proper.

Thus it is improper to instruct the jury as to the effect of a statute making one set of facts and circumstances prima facie evidence of an ultimate fact in the case. Of course, the giving of such instruction would not necessarily be prejudicial. But if the jury is not instructed on this statute or the inference provided therein, there will be no possibility that they will weigh or consider it as evidence in the case and so no harm can come therefrom.

Our problem is not whether the jury improperly considered the effect of this statute but whether there was sufficient evidence to sustain their verdict. In a criminal case, if all reasonable minds must agree that under the evidence shown there is a reasonable doubt of defendant's guilt then no question of fact is presented for the jury. It might be more accurate, since we are concerned with what is reasonable rather than with the type of mind which determines the question, to say that if under the evidence it would be unreasonable to find that there is no reasonable doubt of de-

fendant's guilt then, as a matter of law, the court must direct a verdict of not guilty. It requires stronger or more convincing evidence to sustain a conviction in a criminal case than it does to sustain a finding in a civil action. In civil actions ordinarily all that is necessary to sustain a finding in favor of the proponent thereof is that the evidence be such that it would be reasonable to find that it preponderates in proponent's favor, but in a criminal case the evidence must be such that it would be reasonable to find therefrom that there is no reasonable doubt of defendant's guilt. The evidence necessary to sustain a finding that there is no reasonable doubt of defendant's guilt must be definitely stronger or more convincing than that which is required to support a finding that the evidence preponderates in proponent's favor because it might be well within reason to find that the preponderance of the evidence is in favor of a proposition but be entirely unreasonable to find that there is no reasonable doubt that the contrary of such proposition is true.

Under Sec. 103-18-11, U. C. A. 1943, the delivery of a check knowing that the maker has not sufficient funds or credit with the payee to pay the check in full upon presentation is made prima facie evidence of an intention to defraud. The statute does not expressly make any exception to that rule, but I believe that the legislature intended it to only be such in the absence of other evidence which would explain those facts in such a manner that it would be unreasonable to hold that there is no reasonable doubt of such intention. The defendant in a criminal case is presumed to be innocent until his guilt is established beyond a reasonable doubt. Certainly the statute did not intend to remove this safeguard. So if in the light of all the evidence, including the facts on which the prima facie evidence is based and the explanation thereof, it would be unreasonable to find that there is no reasonable doubt of defendant's guilt then notwithstanding this statute the court should direct a verdict in his favor. See cases cited to that effect in prevailing opinion.

In the absence of an explanation to the contrary, the delivery of a check knowing that the maker has not sufficient funds or credit with the drawee to pay the same in full upon presentation logically tends to prove an intention to defraud. In enacting this statute the legislature recognized this logical tendency, and also recognized that there are grounds for a difference of opinion among the courts as to whether such facts would establish prima facie evidence of such an intention, and intended thereby to set that question at rest where those facts appear and their tendency to show an intention to defraud is not overcome by other evidence to the contrary.

Here defendant attempted to show that he had no intention to defraud although he concedes that he delivered the check under the circumstances required by the statute to make a prima facie case. For the reasons pointed out above, I agree that he failed in this because if the facts which he testified to were true they still did not negative such an intention. But if these facts and circumstances had shown that he had no such intention, or established a reasonable doubt of such intention, then I think the evidence of the existence of such facts and circumstances was such that no reasonable mind could hold that there was no reasonable doubt of his guilt. In other words I think that it would be unreasonable to hold that this evidence cannot reasonably be believed.

Here the defendant testified to the existence of these facts and circumstances: Mrs. Raymond corroborated him in that testimony, and she showed her good faith by paying the check when it was brought to her attention; defendant testified that he had sent a telegram to Raymond of the making of the check. The state could have shown whether this evidence was true or false, it could have investigated the character of Mrs. Raymond, but it did not. Under those circumstances I think it would be unreasonable to hold that those facts were not reasonably established. However, for the reasons stated, I concur with the result.

LATIMER, Justice.

I concur in the result.

I would be inclined to concur outright with Mr. Justice Wolfe were it not for the fact that Mr. Justice Pratt has expressed outright indignation because he claims the judgment of conviction is being sustained upon suspicion. I believe it possible to establish that such is not the case.

I pause to call attention to one bit of evidence given by Mrs. Raymond which is not emphasized in the other opinions. Her evidence is definite and positive that Mr. Raymond only authorized the defendant to draw a draft on Raymond. Such an authorization can hardly be extended to permit a claim on the part of the defendant that he could draw a check on an account that never existed.

I doubt that we need go further than to examine the story told by defendant and decide whether or not his own explanation did not make a jury question of intent to defraud. Mr. Justice Pratt quotes the principle of law to be as follows:

"If the evidence submitted by the defense to negative the intent to defraud is conflicting, or is uncertain, *or is by its very nature such as to lead reasonable minds to come to different conclusions—the one adverse to such an intent,* the other in its favor—then the matter becomes a question for the jury. * * *" (Italics mine.)

Accepting this as a correct statement of law I narrate the following facts as found in the record together with such reasonable inferences as I believe can be gleaned from the evidence. The defendant had issued other checks, he having been convicted of previously uttering checks with insufficient funds. It should reasonably follow that he had some familiarity with banking practice. He had never had any account at the Uintah State Bank and had never made any arrangement for credit. According to his story, the arrangement not only covered one bank but all banks, so that if the jurors were required to accept his story, he could have written a check on his own account on any bank, with expectations that his check would be paid, without any prior arrangements having been made for such a business courtesy. Without some limit geographically (and there is none suggested by the evidence), I am unable to tell whether

the claimed arrangement was intended to be nationwide, statewide, or otherwise. Defendant, having previously issued checks, could reasonably be charged with knowledge that all banks would not pay on such an instrument, without a signature of some kind to identify the maker. Even had Raymond forwarded the money, the defendant must have known the check could not have been honored. He should also have had reasonable apprehension about the money reaching the bank ahead of the check, as the wire he claims to have forwarded Raymond was at least one day after the check had been cashed, which was contrary to Raymond's instructions that if notified ahead of time he would honor drafts in a reasonable amount. It is significant to note that defendant never requested confirmation of or reply to the wire, and never made any attempt to see if his request had been complied with until after he was arrested. There were some fifty days intervening between the day defendant cashed the check and the day Raymond died, and an additional 30 days before defendant was arrested. Of course, defendant did not need to find Raymond to know the check could not be paid. If he had not previously known, all he needed to do was to communicate with the bank that was supposed to have honored his check, and he could have readily discovered the fact. Certainly he had sufficient time to permit the inquiry. Neither before issuing the check nor afterwards did the defendant apprise the bank of any arrangement he might have had with Raymond. He was content to cash his check, send the wire, and do nothing more to prevent its dishonor.

There are at least three factors not particularly stressed in the prevailing opinion which I believe render defendant's claim of good faith extremely doubtful. It appears improbable that a person having some familiarity with issuing checks could believe that any and all banks would honor his personal checks without any previous arrangements for credit or without having opened an account with the banks upon which the checks were to be drawn. It further seems improbable that defendant, who had not been in contact with

Raymond for almost one month and who was uninformed as to his immediate whereabouts, could anticipate that by sending a wire some 24 hours after cashing a check, that funds expected to be sent by Raymond could reach the bank ahead of the check. Lastly, assuming Mrs. Raymond's story to be true, it is doubtful that defendant could have misconstrued Raymond's offer to honor a draft in a reasonable amount drawn on himself, to be a promise to have funds deposited in any bank to cover defendant's personal check. The jury could have found that the version given by Mrs. Raymond was correct and was consistent with ordinary business transactions, while the version given by defendant was fantastic and unreal.

Because of the foregoing reasons and those presented in Mr. Justice Wolfe's opinion, I can hardly see the necessity of concerning ourselves with the legal effect of a statutory presumption. To me the defendant's story and the inferences that reasonably follow cast a doubt on defendant's good faith in making, delivering, and obtaining the money on the check involved, and are such that the court was not required to direct a verdict regardless of the presumption. A jury might have found defendant guilty beyond a reasonable doubt without regard to the statutory enactment, and if so the court could not properly sustain defendant's motion for such a verdict. Accepting Mr. Justice Pratt's statement of the law, the evidence submitted by the defendant is by its very nature such as to permit reasonable minds to conclude the defendant intended to defraud.

PRATT, Justice (dissenting).

What is the proper application of these words, found in the second paragraph of Section 103-18-11, U. C. A. 1943 (quoted in the prevailing opinion) :

*"The making, drawing, uttering or delivering of such check, draft or order as aforesaid shall be prima facie evidence of intent to defraud."?* (Italics added.)

A conviction of this offense of "Issuing Check Against Insufficient Funds" requires proof of four elements: (1)

Making, drawing, uttering or delivering the instrument in question; (2) insufficient (or no) funds with which to pay it; (3) knowledge of such insufficiency of or lack of funds; and (4) a then present intent to defraud the person to whom the instrument is delivered.

The quoted paragraph from Section 103-18-11 says in so many words: From proof of facts (1), (2) and (3) the presumption may be indulged in that fact (4) also is true. Undoubtedly then absent any other evidence if the state presents evidence of facts (1), (2) and (3) the case must go to the jury for consideration, as fact (4) is supplied by the statutory presumption—a presumption of law. This, of course, does not mean that the jury must find the accused guilty. They may not believe the state's evidence.

But suppose the defense presents evidence intended to show that the accused had no intent to defraud—what then is the status of the case?

Two questions arise:

(1)   Should the case go to the jury?

(2)   If it goes to the jury should they weigh the presumption as evidence?

I requote the first quotation of the prevailing opinion taken from the case of *State* v. *Converse*, 40 Utah 72, 119 P. 1030, 1033, as I believe it is more appropriate to the present case than is the second of those quotations. The second is discussing the element of what is a satisfactory explanation, an element peculiar to the larceny statutes.

The first quotation reads:

"If the direct evidence controverting the presumption is not conflicting nor uncertain, if reasonable minds may not differ with respect to the conclusion to be deduced therefrom, then undoubtedly the question is for the court. The jury, in such case, could not be permitted to disregard such direct evidence, or as against it, base a finding of the fact upon the mere presumption. If, on the other hand, the direct evidence with respect to the presumed fact is itself in conflict or is uncertain, or if reasonable minds may differ with respect to the conclusion to be deduced from the direct evidence, that is, if there is some direct evidence in support of the presumption and

some against it, or if the direct evidence claimed to be against it is uncertain, or open to different conclusions, then the question of whether the ultimate fact should be found in accordance with the presumption or against it is for the jury."

As to question No. (1):

If the evidence submitted by the defense to negative the intent to defraud is conflicting, or is uncertain, or is by its very nature such as to lead reasonable minds to come to different conclusions—one adverse to such an intent, the other in its favor—then the matter becomes a question for the jury. On the other hand, if that evidence is not conflicting, is not uncertain, and reasonable minds may not justifiably differ in concluding therefrom that such an intent did not exist, then it is a matter for the court to direct a verdict of not guilty, as the jury, were the case submitted to them would have no right to disregard the evidence, nor base a finding adverse to it upon the presumption.

As to question No. (2):

Now assume that we have a case in which the defense evidence upon the issue of intent to defraud is conflicting, is un certain, or capable of the two opposing reasonable interpretations. The judge must submit the case to the jury; but, in considering the matter of intent to defraud may they place the presumption in the prosecution pan of the scales of justice, and the defense evidence in the other pan, and see which weighs the most? No. The presumption does not have weight as evidence. *State* v. *Green,* 78 Utah 580, 6 P. 2d 177; on rehearing 86 Utah 192, 40 P. 2d 961; *In re Newell Estate,* 78 Utah 463, 5 P. 2d 230; *Saltas* v. *Affleck,* 99 Utah 65, 102 P. 2d 493; *Morrison* v. *Perry,* 104 Utah 151, 140 P. 2d 772; *Frame* v. *Hudspeth,* 10 Cir., 109 F. 2d 356; *Buckley* v. *Francis,* 78 Utah 606, 6 P. 2d 188; *In re Bryan's Estate,* 82 Utah 390, 25 P. 2d 602; *Christiansen* v. *Hilber,* 282 Mich. 403, 276 N. W. 495; *Minutilla* v. *Providence Ice Cream Co.,* 50 R. I. 43, 144 A. 884, 63 A. L. R. 334; and Annotation 95 A. L. R. 878 at page 880.

The logical (though probably not practical) process of the jury's reasoning would be this: They decide first

whether the presumption remains in the case. This depends upon the conclusion they reach upon the conflicting or uncertain evidence, or the conclusion they reach as to which reasonable interpretation of the evidence should be adopted. If they decide that the presumption has been controverted they hold that there is no intent to defraud, and they should acquit the accused. Their process of reasoning to arrive at this point is not that the presumption is evidence which has been outweighed; but as it has been controverted there is *no evidence* of the intent to defraud.

If, however, they conclude from that conflicting or uncertain evidence, or from the adoption of the interpretation of the evidence consistent with the presumption that the intent to defraud has not been negatived so far as that evidence is concerned, then they hold that the presumption has not been controverted and thus is still available to use in deciding whether or not the defendant is guilty. However, such a result does not mean they must conclude that the accused is guilty. They may not believe the state's evidence in support of facts (1), (2) and (3) is true; in which case they would also acquit him. The lack of truth of facts (1), (2) or (3) would mean that the presumption never came into being but the question of whether or not the presumption is erased from the picture by the defense evidence, assumes for answer that there is a foundation for the presumption, and then considers whether or not the presumption has been nullified by controverting evidence.

In the present case we are relieved of worrying about facts (1), (2) and (3). They are admitted by the defense. We center our attention on (4). Facts (1), (2) and (3) being admitted, there is no question but that the statutory presumption came into being. We are thus limited to the question of whether or not it has been nullified by the defense evidence. Incident to this question is that of: Is it a question for the court or a question for the jury?

The prevailing opinion concedes that the defendant's evidence is

*"consistent with innocence * * * not improbable or unreasonable
* * * and that it is uncontradicted."* (Italics added.)

All this terminology does not appear in the quotation above
taken from the *Converse* case; but presumably it is in-
tended to cover practically the same ground, except for the
question of whether or not reasonable minds may differ as to
the conclusions to be deduced therefrom. To show that
reasonable minds may differ in interpreting these facts, the
prevailing opinion introduces the subject this way (speak-
ing of the defendant's evidence) :

*"But can we say that it bears no mark of suspicion or fabrication?"*
(Italics added.)

I think the key to the verdict in this case *is suspicion*—a
suspicion born in the attack upon the credibility of the
accused, but like a contagious disease, spread to the credi-
bility of Mrs. Raymond, a widow, about whom there is not
a scintilla of evidence of a disparaging nature. Suspicious
thoughts do not justify the exercise of the imagination to
support them. Mrs. Raymond is a human being, not just
a fictional character to be painted yellow, grey, or black
as is deemed best to blend with the gloomy fog of those
suspicions. What is the foundation of those suspicions? The
prosecution asked the accused :

"What other names have you gone by, Mr. Prettyman?"

Again :

"Weren't you arrested for leaving the state without permission
under your parole?"

This had to be stricken; but what about the suspicion it
has a tendency to create? Then :

"How many other drafts did you draw?"

No showing was made by the prosecution as to whether
or not those other drafts were bad; yet we are now placing
the burden upon the accused to explain away the suspicion

incident to such a question at such a time. The accused admitted another felony. What has all this to do with Mrs. Raymond's credibility? She testified to the details of the contract between her husband and accused and in line with accused's contentions.

The prevailing opinion, to support a belief that a reasonable interpretation of the evidence supports a suspicious relationship of scheming between the accused and Mrs. Raymond, analyzes the evidence adversely to the accused upon the grounds of the time that elapsed between the issuance of the check, the arrest, and the final payment of the check (March-June-August), also because Raymond and the accused did not keep in touch with each other. In addition note is made of the fact that the wire was sent to the Hungerford Hotel, not the Harold Hotel.

But what about Mrs. Raymond's testimony:

"Thomas Malcolm Raymond. The date of his death May 13, 1946."

"Well he was ill before we got to Salt Lake in the latter part of 1945. He had been noticeably ill for two or three months before."

"We never did get to the Hungerford Hotel because they had no reservations; so they sent us to the Harold Hotel. From there we went out to Renton, Washington. There he kept getting worse and I had to spend every minute of the time with him."

"My husband told him we were going to Seattle the next morning, and he was to wire us at the Hungerford Hotel."

"My husband told him * * *; and if he needed additional money besides what he had, to draw drafts on Mr. Raymond, preferably through the Vernal Bank; but my husband didn't specify Mr. Prettyman was to draw them on any particular bank; and to wire us and let us know how much, where they were drawn, and on whom they were drawn, and we would wire the money."

The check in this case was in the form of a draft with the accused's name Leland Douglas as the one who made the check and also his name, not Raymond's, as the one on whose account the check was drawn.

I am puzzled. When a man has entered upon his last illness—the illness which resulted in his death; and his wife looks after him during that illness, then goes through

the sorrow of his loss, just how much time must be spent contacting an agent in another state (to see if he has acquired an oil lease) to be free of the charge or to be free of the suspicion of fabricating evidence to save the agent from trouble? Do those personal family difficulties evidence an unreliable character as to truth and veracity?

It is just such a case as this that justifies the intervention of the court to prevent a misapplication of legal principles. That we are dealing with a parolee is no justification for letting down the bars of those principles. I am convinced that the lower court in this case should have directed a verdict of not guilty upon the theory that, as the presumption of intent to defraud had been controverted by the defense evidence, there was a failure of proof of the offense due to a failure of proof of fact (4).